CHARLES L. PEARSON, Plaintiff-Appellee, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

First District (4th Division)   No. 81—2734

Opinion filed September 30, 1982.

Victor J. Piekarski and Glen E. Amundsen, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann, Lawrence R. Barezky, and Howard A. London, of counsel), for appellee.

JUSTICE ROMITI delivered the opinion of the court:

The plaintiff is a police officer who, while temporarily disabled from an automobile accident, continued to receive his salary under a city ordinance so providing; the city is not entitled to recover this amount even if the plaintiff should recover from the motorist. The sole issue in this case is whether plaintiff's uninsured motorist insurer can set off this payment from the amount plaintiff would otherwise be entitled to recover under the policy. We hold that any set-off of the salary payments from the amount plaintiff is otherwise entitled to receive would be contrary to the statute requiring uninsured motorist coverage since the purpose of the statute is to place the policyholder in substantially the same position he would have occupied if the wrongful driver had obtained the minimum liability insurance.

On January 8, 1979, the plaintiff, Charles L. Pearson, while on duty as a city of Chicago policeman, was injured by an uninsured motorist. As a result of his injuries, he allegedly was unable to work for nearly two months. The State of Illinois requires a city to pay 75% of an injured policeman's salary during the period of his disability. (Ill. Rev. Stat. 1979, ch. 108½, par. 5—154.) Chicago has, however, elected to provide that "such member of the police department, shall, for the space of twelve months, provided his disability shall last that time, or for such portion of twelve months as such disability shall continue, receive his usual salary." (Municipal Code of Chicago 1979, ch. 11, sec. 11—45.) There is nothing in the ordinance giving the city the right to recoup this amount should the policeman recover from the tortfeasor. Pursuant to the ordinance, plaintiff received $2,732.22 which was his usual salary for the period he was unable to work. The city also paid $2,279.65 for medical expenses; this, in the event of a recovery from a tortfeasor, the city was entitled to recoup. Municipal Code of Chicago 1979, ch. 22, sec. 22—21.

Prior to the injury, plaintiff had obtained an automobile liability policy from defendant State Farm Mutual Insurance Company. As required by law (Ill. Rev. Stat. 1977, ch. 73, par. 755a), the policy provided uninsured motorist benefits. The policy also contained the following provision attempting to limit the insurer's motorist coverage:

"(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by *** (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."

When plaintiff made a claim for uninsured benefits, State Farm claimed the applicable policy limits were reduced by $5,012.87 (the sum of $2,733.22 and $2,279.65); in other words, that the maximum plaintiff could recover was $4,987.13 regardless of the actual amount of damages he suffered. Plaintiff thereupon filed this action seeking a declaration that the limitation either was inapplicable or void. The trial court held that the insurer was entitled to set off the sum of $2,279.65 but not the amount of the salary paid during the disability. Plaintiff has conceded the correctness of the trial court's ruling, and only State Farm appeals.

Plaintiff contends that the salary payments were not amounts paid under any disability benefits law even though paid pursuant to ordinance while plaintiff was disabled arguing (1) that the payments were payments which would have been made irrespective of any injury and (2) the ordinance was not a disability benefits *law* but merely a voluntary act by the city in its capacity as an employer rather than as a lawmaker. We need not consider this contention since we agree with plaintiff that if the provision is otherwise applicable, it is invalid as applied to the facts here.

The purpose of the uninsured motorist coverage required by statute is to place the policyholder in substantially the same position he or she would have occupied if the wrongful driver had obtained the minimum liability insurance required by the financial responsibility law. (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 386 N.E.2d 36; *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 269 N.E.2d 295; *Harper v. City Mutual Insurance Co.* (1978), 67 Ill. App. 3d 694, 385 N.E.2d 75, *appeal denied* (1979), 74 Ill. 2d 586.) Consequently the pivotal issue before this court is whether the exclusionary clause places the plaintiff in the same position he would have occupied if the wrongful driver had obtained the minimum liability coverage of $10,000, and since an examination discloses that it does not, the clause is void. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247; *Harper*; 8D Appleman, Insurance Law & Practice sec. 5131 (1981).

If the tortfeasor had been insured in the minimum amount, plain-

tiff could have received from him the amount of his loss up to $10,000. Of that sum, he could keep all except the $2,279.65 he is required to return to the city. If defendant's contention were followed, his recovery would be reduced not by the $2,279.65 but by $5,012.87. Thus he obviously would not be in substantially the same position he would have occupied if the tortfeasor had been insured. Accordingly, the provision is in contravention of the statute and is void as against public policy. *Harper.*

Defendant's reliance on *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 269 N.E.2d 295, and *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 386 N.E.2d 36, is misplaced. In *Ullman*, the insured had received $14,000 in workmen's compensation benefits. As the supreme court pointed out, if Ullman had recovered $10,000 from the tortfeasor her employer would have been entitled to the entire amount. For this reason the Illinois Supreme Court upheld the provision in Wolverine's policy reducing the amount of uninsured motorist benefits by the amount of workmen's compensation benefits paid; pointing out (48 Ill. 2d 1, 7-8, 269 N.E.2d 298):

> "In Illinois, if the deduction challenged here is permitted, the employee's position is the same under the uninsured motorist's coverage as it would be had the tortfeasor carried the minimum insurance. Where the tortfeasor is insured, the employee reimburses his employer in full from the recovery from the tortfeasor. Where the tortfeasor is uninsured, the benefits paid by the employer are deducted from the recovery. If the benefits paid by the employer exceed the amount payable under the coverage, as here, the insurance carrier is without liability. In neither instance does the employee retain both compensation from the employer and identical damages from the tortfeasor. The deduction provision does not cause the employee with uninsured motorist's coverage to have less financial protection than he would have had if the tortfeasor had carried insurance in the minimal amount. Were we to hold it is contrary to public policy, it would mean that an injured employee's extent of recovery, under circumstances such as exist here, would hinge on the fortuitous circumstance that the tortfeasor was uninsured and was not otherwise financially responsible."

Precisely the converse is true here.

*Stryker* also involved the validity of a provision reducing recovery by the amount of workmen's compensation benefits paid. The compensation insurer in that case had waived any right it might have to re-

cover under the uninsured motorist coverage, an illusory waiver since it is nearly universally recognized that there is no such right. (8B Appleman, Insurance Law & Practice sec. 4960 (1981); 8D Appleman, Insurance Law & Practice sec. 5128.35 (1981).) The insurer had not, as defendant appears to believe, waived its subrogation rights against any tortfeasor. The Illinois Supreme Court pointed out, as it had in *Ullman*, that the issue was whether the insured would be in a worse position if the tortfeasor had been minimally insured and that the compensation insurer's supposed waiver of any rights against uninsured motorist proceeds was irrelevant.

Defendant contends, despite the express statements of the Illinois Supreme Court to the contrary, that in fact Ullman and Stryker would have been better off if the tortfeasor had been insured since under the fund doctrine (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100), the insurer would not have received 100% of the compensation payments made. Defendant overlooks the fact that while under *Baier* the insurer does not always receive 100% of the compensation payments made, that is only because a portion of that amount may under certain circumstances be used to pay an equitable portion of the attorney fees, court costs and other expenses incurred in creating the fund; none of this amount is retained by the tort plaintiff. His recovery is still reduced by 100% of the compensation payments made.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and JIGANTI, J., concur.