JAMES PRICE, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division) No. 82—1687

Opinion filed June 30, 1983.

Burton I. Weinstein & Associates, Ltd., of Chicago (Burton I. Weinstein and Robert L. Miller, of counsel), for appellant.

Victor J. Piekarski and Susan F. Swick, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, James Price, filed a declaratory judgment action in the circuit court of Cook County against defendant, State Farm Mutual Automobile Insurance Company (State Farm). Price was seeking a declaration of his rights under the underinsured motorist provision of a policy issued by State Farm to Price's stepfather, Theodore Alferes. Because none of the facts was in controversy and the only issue involved interpretation of statutes and their application to the contested policy provision, both plaintiff and defendant filed cross motions for summary judgment. The trial court granted defendant's motion to deny plaintiff any recovery under the underinsured motorist clause in the automobile insurance policy.

Plaintiff now appeals, contending that the trial court erred in holding that an exclusion included in the Alferes policy was valid and enforceable on the date of the plaintiff's accident. We agree with plaintiff, and we reverse and remand.

FACTS

On March 1, 1980, all automobile insurers in the State of Illinois became obligated by statute to offer, in addition to the long-standing uninsured motorist coverage, underinsured motorist coverage. The statute provided that, for an additional premium, legally recoverable damages incurred in excess of the applicable limits of the at-fault driver's insurance coverage could now be recoverable under the injured party's own insurance policy. Alferes, who had purchased auto-

mobile insurance from State Farm for several years, renewed his basic policy on or about March 11, 1980; in addition, he contracted for both uninsured and underinsured coverage in newly authorized amounts equal to his bodily liability limit, $100,000 per person/ $300,000 per occurrence. For this increased coverage, Alferes paid two premiums, one for the higher level of uninsured motorist coverage and one for the new underinsured motorist coverage. State Farm issued him an acknowledgement and an endorsement to the policy that verified the limits of both uninsured and underinsured coverages and contained the following exclusion:

> "When Coverage W [underinsured motorist coverage] does not apply.
>
> There is no coverage:
>
> * * *
>
> 3. If the uninsured motor vehicle coverage applies to the accident."

The policy, still containing the same exclusion, was renewed on September 11, 1980.

Meanwhile, during the six-month period between issuance of the new coverage to Alferes and its renewal, the Illinois legislature amended the underinsured motorist statute. Effective September 3, 1980, not only were insurers permitted to limit total recovery to either uninsured or underinsured coverage if both were applicable, but also the definition of "underinsured motorist coverage" changed. Instead of being obligated to make up any deficiency between the liability coverage limits of the at-fault vehicle and the uncompensated damages of the insured (up to the limits of the policy), insurance companies were now allowed to restrict recovery to only that deficiency between the total sum recoverable under the policy of the at-fault driver and the maximum limit of the injured party's underinsured motorist coverage *provided that the injured party carried higher amounts of underinsured motorist coverage than did the at-fault driver.* If the two policies provided the same limits of coverage, nothing could be recovered from the injured party's own insurer no matter how extensive his legally recoverable damages.

On October 4, 1980, James Price, a passenger in a car driven by an uninsured motorist, was severely injured when the car in which he was riding was struck by another car in an intersection. The driver of the at-fault vehicle carried insurance with maximum liability coverage of $25,000. Price, who has undergone brain surgery twice and continues to suffer physical impairment, collected the $25,000 from the insurer of the at-fault driver and $75,000 from State Farm; the

$75,000 represented the difference between the $25,000 and the $100,000 maximum limit of the *uninsured* motorist coverage in the Alferes policy, coverage which both parties agree properly applied to Price because he had been riding with an uninsured driver.

However, when Price sought to recover an additional $100,000 under his *underinsured* motorist coverage, State Farm declined to pay, maintaining that the exclusion in the endorsement to the policy limited Price's recovery to the uninsured motorist coverage if both provisions arguably applied to the same accident, as here. Following State Farm's denial of his claim, Price filed his declaratory judgment action. At the time the trial judge ruled on the cross-motions for summary judgment, he specifically stated,

> "The only question in the Court's mind involved is whether or not the Court should apply an interpretation of the law as it existed at the time of the issuance of the policy, or whether it should interpret the law as it existed at the time of the issuance of the renewal.
>
> *** [W]here statutory regulations are written into contracts, *** when a statute is amended and certain language is deleted, I think it is a settled rule that the effect of the amendment is to render the original statute as if it no longer existed or, if it ever existed.
>
> So it seems to the Court that I have to interpret this case in accordance with the law that existed at the time of the occurrence and at the time of the policy, which would indicate that there was nothing against Illinois public policy that restricted this claim or made void this [clause], an unequivocal provision of the policy."

As a consequence of his application of the law as it existed at the time of the occurrence instead of at the time the policy was issued, the trial judge entered summary judgment in favor of State Farm.

Opinion

The sole issue before the appellate court is whether the exclusion denying James Price's simultaneous recovery under both the uninsured and underinsured motorist provisions "conflicts with provisions of the Illinois Insurance Code, thus rendering said exclusion null and void." (*Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, 549, 290 N.E.2d 284, 286.) A determination of the exclusion's validity must begin with an examination of two pertinent sections of the Illinois Insurance Code, section 143a—1(3) (Ill. Rev. Stat., 1979 Supp., ch. 73, par. 755a—1(3), replaced by Ill. Rev.

Stat. 1981, ch. 73, par. 755a—2(3)) and section 442 (Ill. Rev. Stat. 1979, ch. 73, par. 1054), as they were worded when the Alferes policy was issued:

> "Sec. 143a—1. No policy *** shall be renewed or delivered or issued for delivery in this State *** unless underinsured motorist coverage is offered in an amount equal to the insured's uninsured motor coverage limits. *** Under underinsured motorist coverage the insurer agrees to pay damages the insured would be legally entitled to recover, but which are uncompensated because the total damages exceed the liability coverage limits of the owner of the at-fault vehicle."
>
> "Sec. 442. *** [W]hen any provision in such contract, *** endorsement or rider is in conflict with any provision of this Code, the rights and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary *** thereunder than is required by the provisions of this Code applicable thereto."

Effective September 3, 1980, amended section 143a—2 replaced the earlier version and read as follows:

> "Sec. 143a—2.
>
> (3) *** For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury *** and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required *** is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. ***
>
> ***
>
> (5) Scope. Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under the Section under more than one policy or provision of coverage, any recovery of benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage ***."

As clearly stated in the original version of the statute, the purpose of underinsured motorist coverage was to provide protection against the risk of sustaining damages exceeding the liability limits of insurance carried by the owner of an at-fault vehicle. The original statute focused on the excess damages and defined "underinsured motorist" as an insured, at-fault driver whose liability coverage limits were insufficient to compensate the injured insured for all damages he was legally entitled to recover. After the statute was amended, how-

ever, "underinsured motor vehicle" was defined as one "for which the sum of the limits of liability *** is less than the limits for underinsured coverage provided the insured ***." The meaning of "underinsured" had been changed from "insured for less than the legally recoverable damages" to "insured for less than the insured's underinsured coverage." Last, the amended statute permitted insurance companies to limit recovery to the higher of two applicable provisions of coverage; no such limitation was contemplated by the original statute.

It is clear from the above distinctions that the differences between the two statutes reflected a fundamental change in the purpose of underinsured motorist coverage. No longer were uncompensated damages regarded as the risk insured against; under the revised statute, underinsured motorist coverage protected the insured against the risk of a lesser recovery if injured by an insured driver rather than by an uninsured driver.

State Farm maintained, and the trial court agreed, that the statute in effect at the time of Price's accident governed the amount of recovery. That version of the statute permitted the exclusion, so the limiting language in the endorsement effectively prevented Price from recovering any additional benefits under his underinsured motorist coverage. On the other hand, Price argued that the statute in effect at the time the policy was issued controlled his ability to recover underinsured motorist benefits. Because the policy was never amended, Price contended that the earlier statutory provisions allowing the additional recovery carried through the policy's renewal and were in effect at the time of his accident. Initially, therefore, we must ascertain which statute controls the interpretation of the contested policy provisions.

"[T]he laws which exist at the time and place *** [a contract is made] enter into and form a part of the contract as fully as if they were expressly referred to or incorporated into its terms." (*Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 31, 326 N.E.2d 216, 219.) "[W]hile generally the parties are free to make their own contract [citations], statutes which are in force at the time the policy was issued are controlling, and policy provisions in conflict with the statute are void." (*Bertini v. State Farm Mutual Automobile Insurance Co.* (1977), 48 Ill. App. 3d 851, 854, 362 N.E.2d 1355, 1358.) We agree with Price that the exclusion contained in the March 11 endorsement to the Alferes policy was not authorized by the statute in effect at the time the underinsured motorist coverage was offered and accepted. Consequently, section 442 of the Code (Ill. Rev. Stat. 1979,

ch. 73, par. 1054) requires that State Farm's obligations "shall not be less favorable to the holder of the contract and the beneficiary *** thereunder than is required by the provisions of this Code."

Even though the exclusion was not authorized by the applicable statute, State Farm argues that only the offer of underinsured motorist coverage was mandated by the statute; any restrictions not violative of the purpose of the coverage, therefore, were permissible because no specific level of coverage was ordered. While we agree that restrictions are permissible if they do not conflict with the public policy underlying a statute, we cannot agree that the exclusion at issue is in harmony with the public policy reflected in the language of the first, applicable version of the statute.

As noted above, the original statute authorized insurance companies to offer protection against the risk of injury by an at-fault driver carrying insufficient insurance to cover the injured party's legally recoverable damages; all such uncompensated damages were to be recoverable under the insured's own policy, up to the bodily liability limit.

> "[T]o the extent that the policy *** [restriction] conflicted with the breadth of coverage envisioned by the statute [*i.e.*, section 143a of the Insurance Code], it could be of no force and effect.
>
> * * *
>
> [A]s the intermediate court of review in Illinois, we are obligated to adhere to the statutory constructions applied by our Supreme Court and to decide issues in conformity with the logical extensions of such constructions." (*Doxtater v. State Farm Mutual Automobile Insurance Co.* (1972), 8 Ill. App. 3d 547, 552, 290 N.E.2d 284, 288-89.)

We conclude that during the period before the statute was amended, the legislative intent behind the newly added underinsured motorist coverage was to be interpreted in the same expansive manner as had been the parent statute requiring uninsured motorist coverage. Just as the courts allowed few restrictions to limit recovery under the uninsured motorist statute, we find no support in either the language of the statute or in the clear legislative intent behind the original version of the statute for the restriction at issue in this case.

Defendant's only examples of exclusions or restrictions on uninsured motorist coverage that the courts have approved are those providing for a set-off of any amounts already recovered under worker's compensation law. (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 386 N.E.2d 36; *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 269 N.E.2d 295.) The reasoning be-

hind these allowances is that any benefits thus recovered would have to be returned to the employer upon recovery of benefits from the automobile insurer, so the insured would be in no worse financial position because of the set-off.

On the other hand, exclusions restricting (1) the location of the insured when injured (*Jenkins v. State Security Insurance Co.* (1978), 56 Ill. App. 3d 737, 371 N.E.2d 1203), (2) applicability of coverage from more than one policy to the same accident (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044), and (3) recovery under a policy when salary payments have continued (*Pearson v. State Farm Mutual Automobile Insurance Co.* (1982), 109 Ill. App. 3d 649, 440 N.E.2d 1070) have all been declared void as contrary to the legislative intent behind uninsured motorist coverage. Given this expansive interpretation of the statutory language authorizing uninsured motorist coverage, we agree with Price that when language is added to the same statute authorizing underinsured motorist coverage for all legally recoverable damages uncompensated by the at-fault driver's insurance, the legislative intent is to provide protection against just that risk; any restrictions on recovery of all uncompensated damages, up to the limit of the policy, are therefore void.

'[W]here a private agreement between the parties is in fundamental conflict with public policy as established by the legislature, the private agreement must fall." (*People ex rel. Callahan v. Marshall Field & Co.* (1980), 83 Ill. App. 3d 811, 818, 404 N.E.2d 368, 373.) The intention of the legislature should be sought primarily from the language employed. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) When statutory language is clear and unambiguous, the court's only function is to enforce the law as enacted by the legislature. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 389 N.E.2d 151.) The fact that the legislature later amended the statute to permit the exclusion does not affect Price's rights; "absent express language imposing a retroactive application, a legislative amendment must be construed as prospective. [Citations.] *** [A]mendments which pertain to substantive rights must be applied prospectively." *Swanberg v. Mutual Benefit Life Insurance Co.* (1979), 79 Ill. App. 3d 81, 88, 398 N.E.2d 299, 304.

The exclusion limiting Price's recovery under the underinsured motorist provision was void under the statute in effect when the policy offer was made and accepted. Because the policy's renewal in September 1980 extended only those terms and conditions of insurance previously in effect (*Economy Fire & Casualty Co. v. Pearce*

(1979), 79 Ill. App. 3d 559, 399 N.E.2d 151), the void provision was not renewed. After the September 3, 1980, amendment of the statute, State Farm did not attempt to amend the policy terms in accordance with the procedure outlined in the policy.

Accordingly, for the reasons noted, we reverse the decision of the trial court and remand the case for hearings and arbitration to establish Price's legally recoverable but uncompensated damages.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.