PAULA KAHN, Adm'r of the Estate of Donna Sclafani, Deceased, *et al.*, Plaintiffs-Appellants, v. AETNA CASUALTY & SURETY COMPANY, Defendant-Appellee.

First District (4th Division)   No.1—88—2230

Opinion filed July 27, 1989.

Reibman, Hoffman & Baum and Robert J. Cooney & Associates, both of Chicago (James E. Ocasek, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Dolores V. Horan, and Carol Proctor, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Defendant, the Aetna Casualty and Surety Company, issued an automobile insurance policy to plaintiff Hope Hughes. Hughes and a passenger were subsequently involved in an automobile accident. Hughes and the other plaintiff, Paula Kahn, administrator of the passenger's estate, claimed benefits pursuant to the underinsured motorist provision of the policy.

Plaintiffs then brought this declaratory judgment action in the circuit court of Cook County against Aetna. Plaintiffs sought a declaration that the policy's underinsured motorist coverage extended to the insured's total damages, reduced by any payment by the tortfeasor. The trial court granted Aetna judgment on the pleadings, finding that the policy's underinsured motorist coverage extended only to the policy's limit of liability, reduced by any payment by the tortfeasor. Plaintiff appeals, assigning error to the trial court's findings and judgment.

We affirm the judgment of the trial court.

BACKGROUND

The pleadings allege that on March 17, 1986, Hughes and her passenger, Donna Sclafani, were involved in an automobile accident near 2700 North Lake Shore Drive in Chicago, Illinois. Another automobile struck Hughes' vehicle, causing serious injuries to Hughes and Sclafani, which resulted in Sclafani's death. The insurers of the tortfeasors paid each plaintiff $39,900, which was the total amount of coverage available to the tortfeasors.

Plaintiffs made a claim to Aetna for benefits pursuant to the policy's underinsured motorist coverage. The policy states in pertinent part:

"UNDERINSURED MOTORISTS COVERAGE

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motorist vehicle because of bodily injury sustained by a covered person and caused by an accident. * * *

* * *

LIMIT OF LIABILITY
The limit of liability shown in the Declarations under Uninsured Motorists ($50,000 per person/$100,000 per accident) is our maximum limit of liability under this coverage for all damages resulting from any one accident. This is the most we will pay regardless of the number of premiums shown in the declarations or vehicles involved in the accident.

\* \* \*

*Any amounts otherwise payable for damages under this coverage* shall be reduced by:
1. all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy \* \* \*." (Emphasis added.)

Aetna paid $10,100 to each plaintiff as the benefits due under the policy's underinsured motorist coverage.

Plaintiffs brought this declaratory judgment action, seeking a declaration that the policy's underinsured motorist coverage extended to the insured's total damages, reduced by any payment by the tortfeasor. Aetna answered and subsequently moved for judgment on the pleadings; plaintiffs moved for summary judgment.

At the close of a hearing on these motions, the trial court granted Aetna judgment on the pleadings and denied plaintiffs' motion for summary judgment. The trial court found that the policy's underinsured motorist coverage extended only to the policy's limit of liability, reduced by any payment by the tortfeasor. Since the policy's limit of liability was $50,000 per person, and since each plaintiff received $39,900 from the tortfeasors, then Aetna's payment of $10,100 was correct under the terms of the policy. Plaintiffs appeal.

OPINION

■ A motion for judgment on the pleadings (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(e)) requires a determination of whether the pleadings raise any genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. (*City of Chicago v. Mendelson* (1973), 14 Ill. App. 3d 950, 954-55, 304 N.E.2d 16, 19.) The motion admits all well-pled facts and all fair inferences to be drawn from the pleadings of the opposing party. *Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 821, 420 N.E.2d 567, 569.

At oral argument in this court, plaintiffs correctly noted that the resolution of this controversy turns on the meaning of the insurance

policy. Plaintiffs contend that Aetna and the trial court distort the plain language of the policy. Plaintiffs argue that Aetna erroneously established its coverage "by first considering the *limitations* of coverage rather than the *grant* of coverage." (Emphasis in original.)

Rather, plaintiffs contend that the phrase "[a]ny amounts otherwise payable for damages under this coverage" refers to the grant of coverage found at the beginning of the policy. There, Aetna promises to "pay damages which a covered person is legally entitled to recover." Plaintiffs argue that the phrase does not include the limit of liability provision ($50,000 per person/$100,000 per accident) because that provision is "used elsewhere in the policy for special purposes and with specific intent." Since the limit of liability provision is not used in the disputed phrase, plaintiffs infer that Aetna did not intend to include the provision within the meaning of the phrase. Aetna, rather, intended something different than "limit of liability" with the language it did use.

■■ ■ A court will resolve any ambiguity or uncertainty in an insurance policy against the insurer; however, this does not alter the principle that insurance policies are contracts and the general rules of construction that apply to other contracts also apply to insurance policies. Whether an ambiguity exists is a question of law for the court to determine. Where the language of the policy is clear and unambiguous, the court must take it in its plain, ordinary, and popular sense, and the court must determine the intent of the parties solely from the language used. Accordingly, we must examine the entire policy in the present case and interpret its pertinent parts in light of the whole document to determine whether there exists any ambiguity or uncertainty in the language at issue. *Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill. App. 3d 410, 412, 407 N.E.2d 77, 79.

■ After examining the entire policy, we find no ambiguity or uncertainty in its language. Further, we reject plaintiffs' interpretation of the policy. The problem with plaintiffs' argument is that it does not consider the entire policy as a whole. Indeed, plaintiffs attempt to locate, categorize, and isolate the limit of liability provision, so that they may argue that it is not included in the phrase "[a]ny amounts otherwise payable for damages under this coverage."

The trial court was correct in rejecting plaintiffs' argument. The court correctly found that the disputed phrase includes the limit of liability provision. This finding was based on an interpretation of the document's pertinent provisions in light of the whole policy.

We additionally note that the trial court's interpretation of the policy is consistent with the purpose of underinsured motorist cover-

age. A driver does not insure against the risk of uncompensated damages. Rather, underinsured motorist coverage protects the insured against the risk of a lesser recovery if injured by an insured driver rather than by an uninsured driver. (*Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 468, 452 N.E.2d 49, 53.) This was the very result obtained in the case at bar. The tortfeasors' insurers paid each plaintiff $39,900. Plaintiffs were each entitled to $50,000 under Aetna's policy. Thus, Aetna paid each plaintiff $10,100. This put plaintiffs in the same position as if the tortfeasors were uninsured.

■ Plaintiffs alternatively contend that the language of the policy is at least ambiguous and that we should construe the ambiguity in their favor. This contention fails. The well-known rule that all ambiguities in an insurance policy will be construed most strongly against the insurer, as the party that drafted the policy, applies only where an ambiguity in fact exists; a court may not distort the contract to create the ambiguity itself. *Nationwide Insurance Co. v. Ervin* (1967), 87 Ill. App. 2d 432, 435, 231 N.E.2d 112, 114, cited in *Coronet Insurance Co. v. Ferrill* (1985), 134 Ill. App. 3d 483, 485, 481 N.E.2d 43, 45.

In the case at bar, the parties agreed on the material facts before the trial court and continue to do so. The only issue before the court was whether the pleadings entitled Aetna to judgment as a matter of law. We agree with the trial court that Aetna is so entitled. Consequently, we uphold the trial court's grant of judgment on the pleadings for Aetna.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.