**Terry A. SCORE, Plaintiff and Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

Civ. No. 940394.

Supreme Court of North Dakota.

Sept. 22, 1995.

American Family Mutual Insurance Company for $100,000 of underinsured motorist coverage. We affirm.

Score was injured in a four-vehicle accident on May 7, 1988. Score sued Steven E. Hanna, who was driving one of the vehicles in the accident, and secured a judgment for $241,531.70 after a jury trial. Hanna was insured by State Farm Mutual Automobile Insurance Company under a policy having bodily injury liability limits of $100,000. Score was insured by an American Family insurance policy providing underinsured motorist coverage with limits of $100,000. By letter of April 9, 1992, Score's attorney informed American Family's attorneys that Score intended to settle with Hanna and his insurer for "$140,000 as to Steven Hanna and $40,000 bad faith claim as to State Farm." On April 15, 1992, American Family's attorneys responded that "American Family does not intend to substitute its draft for State Farm's $180,000" and that "American Family would be entitled to an offset of $180,000 in the UIM claim for compensatory damages paid to Ms. Score."

On May 12, 1992, Score released and discharged Hanna for $140,000 paid by State Farm. This release covered interest, non-economic damages, and future economic loss. Score also released and discharged State Farm on May 12, 1992, for $40,000. This release covered "elements of loss not covered by the verdict and judgment of 1/15/92 including mental anguish or distress arising from bad faith." State Farm's payments to Score exhausted the limits of liability insurance available to Hanna.

Score sued American Family for $100,000 of underinsured motorist coverage. The parties filed cross motions for summary judgment on stipulated facts. Relying on *Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115 (N.D.1991), the district court granted American Family's motion and denied Score's motion, reasoning:

> "Reading Score's policy in its entirety, it is the opinion of this Court that the 'amounts payable' phrase refers to the policy's UIM limits and not, as the Plaintiff argues, to the total damages suffered. Score's policy

Dosland, Nordhougen, Lillehaug, Johnson and Saande, Moorhead, and Richie & Associates, Fargo, for plaintiff and appellant; argued by Duane A. Lillehaug.

Anderson & Bailly, Fargo, for defendant and appellee; argued by Daniel L. Hull, Fargo.

VANDE WALLE, Chief Justice.

Terry A. Score has appealed a summary judgment dismissing her action against

with American Family has UIM limits of $100,000. Score has already received in excess of $100,000 from State Farm. Reducing the UIM limit, $100,000, by the amount Score has already received, over $100,000, results in a negative number.

"Thus, the Court concludes as a matter of law that the Plaintiff is not entitled to recover underinsured motorist benefits from the Defendant."

On appeal, Score urges that the policy in *Thompson* is distinguishable from her policy or, if we do not agree it is distinguishable, she urges that we reverse *Thompson* because it was wrongly decided.

▮▮▮ There are two main theories of the coverage provided by underinsured motorist coverage. *North River Ins. Co. v. Tabor*, 934 F.2d 461 (3rd Cir.1991); *Waters v. United States Fid. & Guar. Co.*, 328 Md. 700, 616 A.2d 884 (Md.App.1992). "Under the 'excess' theory a tortfeasor is underinsured when the injured party's damages exceed the tortfeasor's liability coverage." *Waters v. United States Fid. & Guar. Co.*, 616 A.2d at 889 n. 5. "Under the 'gap' theory a tortfeasor is underinsured when the injured party's uninsured motorist coverage exceeds the tortfeasor's liability coverage." *Id.*[1]

The insurance policy in *Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d at 116, provided that the insurer would "pay damages for bodily injury ... caused by accident ... arising out of the maintenance or use of an under-insured motor vehicle" if the damages were "damages an insured ... is legally entitled to recover from the owner or driver of an under-insured motor vehicle." The policy further provided:

"COVERAGE 1–2

1. The amount of coverage is shown on the front of the Declarations under '1–2—Each Person Each Accident.'

Under 'Each Person' is the amount of coverage for all damages due to bodily injury to one person.

\* \* \* \* \*

Under 'Each Accident' is the total amount of coverage for all damages due to bodily injury to two or more persons in the same accident.

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured:

a. under any workers' compensation, disability benefits or similar law; or

b. by or for any person or organization who is or who may be held legally liable for the bodily injury to the insured; or

c. for bodily injury under the liability coverage."

*Id.* at 116. The insured, who had received $500,000 from the other driver's insurance company, and whose damages exceeded $500,000, contended "that 'any amount payable' under part 2 must refer to 'any damages payable.'" *Id.* at 117. Disagreeing, a majority of this court said that "[w]hen read as a whole the policy is unambiguous," *id.* at 117, and denied recovery:

"In our view, 'any amount payable under this coverage', under part 2, relates to the reference to '1–2 Underinsured Motorist $100,000 EACH PERSON/$300,000 EACH OCCUR.' which is shown on the front of the Declarations page. If we take that amount, i.e., $100,000 and reduce it by items listed in paragraphs a., b., and c. of part 2, we arrive at negative $400,000 in this case, as the Thompsons have already been paid $500,000 by the third-party tortfeasor's insurance carrier."

*Id.* at 117.

Score's underinsured motorist coverage endorsement to her family car insurance policy provides:

---

1. "Gap" coverage is sometimes referred to as the "difference-in-limits" coverage. A third type of coverage is a "modified difference-in-limits" coverage which is designed to protect against inequity under the pure difference-in-limits coverage when injuries to multiple persons reduce the available amount of liability insurance. *See* Minutes of House and Senate Industry, Business and Labor Committees and Minutes of Conference Committee, HB 1155, Fifty First Leg. Sess., 1989. North Dakota has enacted the modified difference-in-limits approach. *Id. See* section 26.1–40–15.1(2)(b), NDCC ["Has been reduced by payments to other persons injured in the accident to an amount less than the limit for underinsured motorist coverage...."] *See also* 1987 N.D. Laws Ch. 369 [same definition].

"*We* will pay compensatory damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle.* The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the *underinsured motor vehicle.*

\* \* \* \* \*

"LIMITS OF LIABILITY

The limits of liability shown in the declarations apply, ...

Any amounts payable will be reduced by:

1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an *underinsured motor vehicle.*

2. A payment under the Liability coverage of this policy.

3. A payment made or amount payable because of bodily injury under any workers' compensation or disability benefits law or any similar law."

Score's underinsured motorist coverage endorsement and the underinsured motorist policy in *Thompson v. Nodak* are very similar. Score attempts to avoid the *Thompson v. Nodak* result by pointing out that her policy does not contain the words "under this coverage" after the words "Any amount payable," as in the *Thompson v. Nodak* policy. We deem Score's "proffered distinction to be one without a difference." *Werlinger v. Mutual Service Cas. Ins. Co.,* 496 N.W.2d 26, 28 (N.D.1993).

*Thompson* noted that the statutory definition of an underinsured motor vehicle, then found at section 26.1–40–15.3, NDCC, was not in effect at the time of the accident. That statute defined an "underinsured motor vehicle" as one "for which the applicable limit

of liability insurance is less than the applicable limit of underinsurance coverage." The *Thompson* accident took place in 1986; the statute was enacted in 1987. *See* 1987 N.D. Laws, Ch. 369 § 1. The *Thompson* court did not apply the 1987 legislation because there was no indication it was to be applied retroactively. *See Reiling v. Bhattacharyya,* 276 N.W.2d 237 (N.D.1979).

In this case, the statutory definition was in effect. *See* section 26.1–40–13(1), NDCC, prior to its repeal in 1989. Although we are here initially concerned with whether or not Hanna's vehicle was underinsured as defined by the policy and statute, not the amount to be recovered if the vehicle is underinsured, section 26.1–40–14(3), NDCC, which was amended by 1987 N.D. Laws, Ch. 369 § 2 provided:

"*3. The liability of the insurer providing underinsured motorist coverage cannot exceed the limits of the underinsured motorist coverage stated in the policy, and the maximum liability of the underinsured motorist coverage is the lesser of:*

 *a. The difference between the amount paid in compensatory damages to the insured by and for any person or organization who may be legally liable for the bodily injury, sickness, disease, or death resulting therefrom, and the limit of underinsured motorist coverage; or*

 *b. The amount of compensatory damages, established but not recovered by any agreement, settlement, or judgment with or for the person or organization legally liable for the bodily injury, sickness, disease, or death resulting therefrom.*" [2]

Although section 26.1–40–15.5, NDCC, permits terms of coverage and conditions to be more favorable to an insured or the limit higher than required by section 26.1–40–15.3,

**2.** Section 26.1–40–14 was repealed by 1989 N.D. Laws, Ch. 375 § 8. Provisions for underinsured coverage were enacted by § 3 of the same chapter and are codified as section 26.1–40–15.3, NDCC. These provisions were not in effect at the time the Score underinsured endorsement was added or at the time of the accident and have not been applied in this opinion. The current provisions retain essentially the same defini-

tion of an underinsured vehicle but appear to require excess coverage if the vehicle is underinsured. ["Maximum liability ... is the lowest of ... the amount of compensatory damages established but not recovered ... or the limits of liability...."] *See* Minutes of House and Senate Industry, Business and Labor Committees and Minutes of Conference Committee, HB 1155, Fifty First Leg. Sess., 1989.

NDCC, underinsured motorist coverage appears to be essentially a function of a statute. *See Gabriel v. Minnesota Mut. Fire and Cas.*, 506 N.W.2d 73 (N.D.1993). There is no evidence in this record that Score and American Family bargained for coverage greater than that required by law. *Cf. Walle Mut. Ins. Co. v. Sweeney*, 419 N.W.2d 176 (N.D. 1988) [No evidence of increased premium justifying claimed coverage.] Nor has the Legislature substantively amended its definition of an underinsured motorist in light of our decision in *Thompson*. Thus, the *Thompson* holding does not conflict with the legislative requirements, e.g., *Johnson v. Johnson*, 527 N.W.2d 663 (N.D.1995).

The statutory definition of an underinsured motorist and the statutory liability requiring only difference-in-limits coverage, coupled with the lack of any evidence that "excess" coverage was bargained for, i.e., that the underinsured coverage was intended to be anything more than the statutorily-required coverage under section 26.1–40–14, NDCC, as amended by 1987 N.D. Laws Ch. 369, § 2, belies any intended "excess" coverage. The Score policy with American Family was effective December 22, 1987. The underinsured motorist coverage endorsement appended to the policy parrots the terms and definitions of the 1987 N.D. Laws Ch. 369 requiring motor vehicle liability insurance policies to contain underinsured coverage. It evidences an intent to provide nothing more than the statutorily-required underinsured coverage.

 Thus, this case is stronger than *Thompson* because in *Thompson* the accident—and obviously the policy—preceded the 1987 legislation and the legislation was not considered by the Court in reaching its decision. Here, the 1987 statute was effective when the accident occurred and, more significantly, when the policy with the underinsured endorsement became effective. Moreover, because of the use of nearly identical language to the 1987 statutory language, there is no indication the endorsement intended any coverage beyond that required by the statute. If there is a conflict between an automobile liability-policy form proper and the endorsement attached thereto, the provisions of the endorsement prevail. *Miller v. State Auto. Ins. Ass'n,* 74 N.D. 306, 21 N.W.2d 621 (1946).

Interpreting the policy as a whole, in *Thompson v. Nodak* we reached a difference-in-limits result. *Thompson* placed no particular emphasis on the words "under this coverage" and we do not now do so. In our view, deletion of the words "under this coverage" from the reducing clause in the *Thompson* policy would not change the meaning of the policy. The words "under this coverage" could not have referred to any coverage other than the underinsured motorist coverage provisions in which they appeared. We conclude that the district court correctly construed Score's underinsured motorist coverage endorsement in accordance with this court's decision in *Thompson v. Nodak.*

The judgment of dismissal is affirmed.

SANDSTROM and LEVINE, JJ., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent because I believe this insurance policy should be construed in Score's favor.

First, the language of this policy connotes a coverage broader than the statute dictates. Generally, an insurer may offer more coverage than is required by statute. *See Johnson v. American Family Mut. Ins. Co.*, 193 Ill.App.3d 794, 140 Ill.Dec. 783, 550 N.E.2d 668, 673 (1990) ("The policy can provide coverage broader than the statute" and "any conflict between the statute and policy ought to be resolved to the benefit of the insured."); *Travelers Ins. Cos. v. Chandler,* 569 So.2d 1337, 1338 (Fla.App.1990) ("Florida law does not preclude an insurer from offering greater coverage than is statutorily required" through a broader definition of the underinsured motor vehicle.); 44 C.J.S. *Insurance* § 288 p. 539 (1993) ("Insurance companies and insureds may contract for coverage in excess of the coverage required by particular statutes, particularly where the statutory provision is for the benefit of insured."); 8C John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 5067.65, p. 56 (1981) ("While a statute may set a minimum amount of protection, it does not purport to control

the maximum coverage which may be made available."). Although not adopted until 1989, NDCC 26.1–40–15.7(5) reflects the general rule: "Nothing in sections 26.1–40–15.1 through 26.1–40–15.7 may be construed to prevent an insurer from offering, making available, or providing coverage terms and conditions more favorable to its insured or limits higher than are required by sections 26.1–40–15.1 through 26.1–40–15.7."

Legislation in the 1987 legislative session first mandated that motor vehicle liability insurance policies offer coverage for injuries caused by the owners or operators of underinsured motor vehicles. S.L.1987, Ch. 369. As originally introduced, it would have required "excess" coverage by defining an underinsured motor vehicle as "a motor vehicle which . . . is, with respect to any particular accident insufficiently insured to fully pay damages to a person legally entitled to recover damages arising from the accident." House Bill 1279. Due to concern about higher premiums, the Legislature changed the definition before passage to what is essentially now codified at NDCC 26.1–40–15.1(2). That section defines an underinsured motor vehicle narrowly:

> "Underinsured motor vehicle" means a motor vehicle for which there is a bodily injury liability insurance policy . . . in effect at the time of the accident, but the applicable limit of bodily injury liability of such policy or bond:
>
> a. Is less than the applicable limit for underinsured motorist coverage under the insured's policy; . . .

*Id. See* S.L.1987, Ch. 369, § 1. In contrast, Score's policy does not carry the statutory definition, but rather defines an underinsured motor vehicle more broadly as a "motor vehicle which is insured by a liability bond or policy . . . which provides bodily injury liability limits less than the damages an insured person is legally entitled to recover."

A policy definition that differs from the statutory one should count for something, and be given its ordinary meaning. NDCC 9–07–09. Perhaps, as the majority said in *Thompson v. Nodak*, 466 N.W.2d at 119, we cannot wholly "determine how much cover-age exists in this case" from a policy definition of an underinsured motor vehicle. Surely, however, the policy definition can help identify the correct figure to subtract a payment to the insured from, when we must interpret the policy as a whole. NDCC 9–07–06. American Family's definition, describing more extensive coverage than the statutory minimum, ought not be ignored. Unlike the majority, I believe this fact, that Score's policy defines an underinsured motor vehicle more broadly than the statute, evidences that the insured and insurer "bargained for coverage greater than that required by law."

Obviously, something more was intended by American Family's policy language. We should uphold that broader coverage.

Second, I adhere to the view I expressed in dissent in *Thompson v. Nodak Mut. Ins. Co.*, 466 N.W.2d 115 (N.D.1991), that the policy was ambiguous. Three justices in *Thompson v. Nodak* thought the policy was unambiguous and reached a "gap" theory result. Two justices in *Thompson v. Nodak* thought the policy was ambiguous and would have reached an "excess" theory result. In *State Farm Fire & Cas. Co. v. Sigman*, 508 N.W.2d 323, 325 (N.D.1993), we held that "an insurance contract is ambiguous when reasonable arguments can be made in support of different positions as to its meaning."

Not only have justices of this court advanced reasonable arguments in support of different positions as to the meaning of the language used in the policy in *Thompson v. Nodak*, but other courts have also reached different conclusions about the meaning of the same or similar language. *Wood v. American Family Mut. Ins. Co.*, 148 Wis.2d 639, 436 N.W.2d 594, 599 (1989), where the court found "that the words 'amounts payable' found in the reducing clause in each UIM policy at issue are ambiguous." Construing the policy as a reasonable insured would understand it, the court in *Wood* held that the reducing clause

> does not reduce UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. Rather, the

"amounts payable" from each UIM provision ... are measured against the insured's total damages, and the reducing clauses reduce UIM benefits by subtracting from the total damages ... the amount received by the insured from the underinsured driver's liability policy.

*Id.* at 601. Similarly, in *Weber v. American Family Mut. Ins. Co.*, 868 F.2d 286 (8th Cir.1989), the policy declared that "American Family would pay 'damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle,'" and that "[a]ny amounts payable [under the underinsured motorist coverage] will be reduced by * * * [any] payment made by the owner or operator of the underinsured motor vehicle or organization which may be legally liable.'" *Id.* at 287. The payment the *Weber* insured received from an underinsured tortfeasor's insurer was likewise subtracted from his total damages, not from the policy's limits. *Id.*

On the other hand, the court in *Kahn v. Aetna Cas. & Sur. Co.*, 186 Ill.App.3d 803, 134 Ill.Dec. 532, 542 N.E.2d 878 (1989), construed the following reducing clause in the same way as the majority did in *Thompson v. Nodak:*

*Any amounts otherwise payable for damages under this coverage* shall be reduced by:

1. all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy * * *(emphasis added).

*Id.,* 134 Ill.Dec. at 533, 542 N.E.2d at 879. The court upheld, at 134 Ill.Dec. at 534, 542 N.E.2d at 880, the trial court's determination that "the policy's underinsured motorist coverage extended only to the policy's limit of liability, reduced by any payment by the tortfeasor."

These varying constructions of the same or similar reducing clauses in underinsured motorist policies by justices of this and other courts show that "reasonable arguments can be made in support of different positions as to [their] meaning." *State Farm Fire & Cas. Co. v. Sigman,* 508 N.W.2d at 325. The reducing clause in the policy in this case is, therefore, ambiguous, I believe. The policy should, then, be construed in favor of Score.

[I]t is well-established in North Dakota that, because an insurance policy is a contract of adhesion, any ambiguity or reasonable doubt as to the meaning of the policy is to be strictly construed against the insurer and in favor of the insured. If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted.

*Aid Ins. Services, Inc. v. Geiger,* 294 N.W.2d 411, 414 (N.D.1980). *See also Continental Cas. Co. v. Kinsey,* 499 N.W.2d 574 (N.D. 1993) (an insurance policy is a contract of adhesion and an ambiguity, absent evidence of a contrary intent, is construed against the insurer).

An insurer whose policies are not written so that an ordinary layperson can clearly understand them "must assume the consequences of the ambiguity." *Aid Ins. Services, Inc.* at 415. Here, one reasonable interpretation of the reducing clause, that "amounts payable" refers to the insured's damages, will impose liability on the insurer. Another reasonable interpretation of the reducing clause, that "amounts payable" refers to the policy's coverage limits, will not impose liability. In accordance with established North Dakota precedents, we should overrule *Thompson v. Nodak* and adopt the interpretation more favorable to the insured.

Third, we ought not lightly choose an interpretation of an ambiguous policy that will often lead to little, if not wholly illusory, coverage. In *Hoglund v. Secura Ins.,* 176 Wis.2d 265, 500 N.W.2d 354 (1993), Hoglund's underinsured motorist coverage limit was $25,000. A statute required Wisconsin drivers to have liability insurance for at least $25,000. The insurance policy defined an underinsured motor vehicle as one with a bodily injury liability policy in an amount lower than the underinsured motorist coverage limit. The policy defined out-of-state vehicles with liability limits of less than $25,-

000 as uninsured vehicles. The court said of the policy's underinsured motorist coverage:

> Because Wisconsin drivers must have a liability policy of at least $25,000, Hoglund will never recover under American States' $25,000 UIM policy if the tortfeasor is an insured Wisconsin driver. If the driver is uninsured, Hoglund would recover under the uninsured motorist provisions, not the UIM provisions.
>
> Moreover, the UIM provisions would not provide coverage if the tortfeasor is an insured out-of-state driver.... Consequently, there are no circumstances under which Hoglund can recover under the UIM provisions.

500 N.W.2d at 356. The court concluded, 500 N.W.2d at 357:

> Because Hoglund has paid a premium for UIM coverage under which no benefits will ever be paid, the coverage is illusory and against public policy.

The illusion of a promised coverage implicit in the sale of underinsured coverage has concerned other courts. *Glazewski v. Allstate Ins. Co.,* 126 Ill.App.3d 401, 81 Ill.Dec. 349, 466 N.E.2d 1151, 1156 (1984) ("underinsured coverage in the minimum limits of 15/30 is indeed illusory because it would never be payable when recovery is sought from another Illinois motorist" or when "the at-fault driver is insured in other states which have financial responsibility limits equal to or greater than those required in Illinois"); *Meridian Mut. Ins. Co. v. Richie,* 540 N.E.2d 27 (Ind.1989) (underinsured motorist coverage is illusory when the minimum mandatory liability insurance limit equals or exceeds the underinsured coverage limit); *Stracener v. United Services Auto. Ass'n,* 777 S.W.2d 378, 383 (Tex.1989) (unless liability insurance payments are subtracted from the insured's actual damages, rather than from the underinsured motorist coverage limits, "underinsured motorist coverage would offer most motorists only nominal protection.").

When uninsured coverage and underinsured coverage are written separately for separate premiums, as here, rather than together with a single premium, the illusory effect can be readily seen. *See* NDCC 26.1–40–15.7(3) ("Notwithstanding any other provision ... or other laws of this state, an insurer may make underinsured motorist coverage a part of uninsured motorist coverage."). The court in *Weber v. American Family Mut. Ins. Co.,* 868 F.2d at 288, explained this well. If payments from a tortfeasor's liability insurance company are subtracted from the insured's underinsured motorist coverage limit, rather than from the insured's damages, "an insured ... would never reach the limits of liability set forth in the Underinsured Motorist Coverage Endorsement of the contract unless the insured was dealing with an uninsured motorist rather than an underinsured motorist." *Id.*

For these reasons, I would conclude that American Family's reducing clause requires that payments received by its injured insured, Score, from the tortfeasor's liability insurer be subtracted from Score's total damages, rather than from the underinsured coverage limit, in determining underinsured benefits. Therefore, I respectfully dissent.

NEUMANN, Justice, dissenting.

The majority tells us Score's policy provides only gap coverage because it is similar to the policy construed in *Thompson v. Nodak Mut. Ins. Co.,* 466 N.W.2d 115 (N.D. 1991), which provided only gap coverage. The majority acknowledges the *Thompson* policy referred to amounts payable "under this coverage" while the Score policy does not, but claims the extra words don't make any difference because in *Thompson* we didn't say they made a difference.

I cannot agree with the majority's statement that the phrase "under this coverage" in the *Thompson v. Nodak* insurance policy creates a "distinction without a difference." The presence of that phrase in that policy not only makes a difference, it makes possible the result in that case. Without that phrase the policy's reference in *Thompson v. Nodak* to "any amount payable" would have been ambiguous. It could have referred equally as well to the injured party's damages (the "excess" theory) as to the injured party's uninsured motorist coverage (the "gap" theory), were it not for the clarifying

words "under this coverage" immediately following "any amount payable."

The majority argues *Thompson v. Nodak* placed no particular emphasis on the words "under this coverage." That statement of course is true enough, but proves little. Neither did the *Thompson* opinion place any particular emphasis on any of the other dozens of clarifying phrases in the opinion without which the policy would have been ambiguous.

The fact is the Score policy says it will pay "compensatory damages for bodily injury which an insured person is legally entitled to recover" (no limitation there), and then, under "Limits of Liability," simply says "any amounts payable will be reduced by: 1. A payment made or amount payable ... under any collectible auto liability insurance ..." (no suggestion there, either, as to the meaning of "amounts payable"). Nothing in the language of the policy tells us "amounts payable" refers to the policy limits of Score's underinsurance motorist coverage, rather than to the "compensatory damages" Score was "legally entitled to recover." Because the policy is susceptible of two different reasonable interpretations, it is ambiguous, and such ambiguity is to be resolved in favor of coverage for the insured. *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179, 181 (N.D.1994). I would reverse.