616 A.2d 884

**John M. WATERS**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY.**

**No. 66, Sept. Term, 1990.**

Court of Appeals of Maryland.

Dec. 18, 1992.

Thomas J. Waters (Fraser, Trebilcock, Davis & Foster, P.C., Lansing, Mich., Christopher Naughten, Rohrbaugh & Abbondanza, P.C., Rockville, on brief), for petitioner.

Mark D. Palmer (Edward C. Bacon, Sharon A. Marcial, McCarthy, Bacon & Costello, on brief), Landover, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and CHARLES E. ORTH, JR., Judge of the Court of Appeals of Maryland (retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

This case involves the requirements of the uninsured motorist provisions of the Maryland Insurance Code. It arises out of an automobile accident which occurred in Gaithersburg, Maryland. The plaintiff, John Waters, was a passenger in an automobile driven by Edward Schreier and owned by Edward's father. Mr. Waters sustained physical injuries when the Schreier automobile crossed the center line and struck a pick up truck driven by Shirley Dunham. Ms. Dunham also sustained injuries in the collision.

The Schreier vehicle was insured by Continental Insurance Company, under a policy issued in Maryland, with a total limit of liability coverage of $100,000, *i.e.*, $100,000 per person and $100,000 per accident. The plaintiff, John Waters, was an insured under an automobile insurance policy issued in Maryland by the defendant United States Fidelity & Guaranty Company (USF & G). The USF & G policy provided uninsured motorist coverage with limits of $100,-000 per person and $300,000 per accident.

John Waters filed in the Circuit Court for Montgomery County the present action for money damages, naming as defendants Edward Schreier, Ms. Dunham and USF & G. Ms. Dunham filed in the same court a separate action for money damages against Edward Schreier, and in this suit Mr. Schreier filed a cross claim against Ms. Dunham.

The lawsuit between Ms. Dunham and Edward Schreier was resolved when Mr. Schreier entered into a consent judgment in favor of Ms. Dunham in the amount of $97,000. Mr. Schreier's liability insurer, Continental Insurance Company, paid Ms. Dunham $97,000. Consequently, although Continental had valued Mr. Waters's damages at $83,000, only $3,000 was available to Mr. Waters under Edward Schreier's liability policy.

Mr. Waters in the present case sought to recover from USF & G under his uninsured motorist coverage. USF & G denied that Mr. Waters was entitled to recover under the policy. The insurer moved for summary judgment on the ground that Mr. Schreier was not driving an "uninsured motor vehicle," as that term is defined in Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 541, because the limit of uninsured motorist coverage in the USF & G policy did not exceed the limit of liability coverage on the Schreier automobile.[1] USF & G also claimed that its policy did not

---

1. Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c), defines "uninsured motor vehicle" as follows:

"(1) In this subsection, 'uninsured motor vehicle' means a motor vehicle whose ownership, maintenance, or use has resulted in the

provide for underinsured coverage. The trial court compared Mr. Schreier's total liability limit of $100,000 with Mr. Waters's uninsured motorist per person limit of $100,000. The trial court did not consider the per accident limit of $300,000 under Mr. Waters's uninsured motorist coverage.[2] Based upon the above comparison, the trial court held that Mr. Schreier was not driving an "uninsured motor vehicle," as defined by § 541(c), and that Mr. Waters could not collect under the uninsured motorist provisions of his policy. The court granted USF & G's motion for summary judgment.

Mr. Waters filed a motion pursuant to Maryland Rule 2–602(b) requesting that the trial court direct the entry of a final judgment in favor of USF & G. In a multiple claim or multiple party case, Rule 2–602(b) allows a court to direct the entry of a final judgment as to a claim or a party "[i]f the court expressly determines in a written order that there is no just reason for delay." The trial court's order in this case merely stated that "[u]pon consideration of the plaintiff, John Waters['s], Motion for Final Judgment, and good cause shown, it is ... ORDERED, that the Motion be GRANTED." The court failed to make an express determination that there was no just reason for delay. Consequently, the trial court's purported Rule 2–602(b) determination was ineffective, and there was no final appealable

bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to the bodily injury or death is less than the amount of coverage provided to the insured under this subsection."

2. Although it appears that the trial court was aware of the existence of the $300,000 per accident limit, in its motion for summary judgment USF & G stated that Mr. Waters's "USF & G policy carried uninsured motorist coverage benefits in the amount of One Hundred Thousand Dollars." USF & G omitted any reference to a per accident limit of $300,000. USF & G described Mr. Schreier's policy with Continental Insurance Company as having bodily injury liability limits of $100,000 per person and $100,000 per accident. USF & G's motion for summary judgment was misleading in that it implied that Mr. Waters's uninsured motorist coverage was $100,000 per person and $100,000 per accident instead of $100,000 per person and $300,000 per accident.

judgment in favor of USF & G. *Blucher v. Ekstrom*, 309 Md. 458, 462, 524 A.2d 1235, 1237 (1987). The order granting summary judgment in favor of USF & G was fully subject to revision by the trial court at any time until the entry of a proper final judgment, and USF & G remained a party in the trial court. Rule 2–602(a)(2) and (3). *See also, e.g., Sisk v. Friendship Packers*, 326 Md. 152, 159–160, 604 A.2d 69, 72–73 (1992); *Quartertime Video v. Hanna*, 321 Md. 59, 65–66, 580 A.2d 1073, 1076 (1990).

After the trial court's ineffective Rule 2–602(b) determination, the plaintiff Waters filed a notice of appeal. Subsequent to the filing of the notice of appeal, but prior to argument in the Court of Special Appeals, Mr. Waters dismissed his claim against Ms. Dunham. In addition, as a result of a settlement, Mr. Schreier entered into a consent judgment in favor of Mr. Waters in the amount of $75,000. Upon the entry of the consent judgment, all claims in the trial court had been disposed of, and there was a final appealable judgment under Rules 2–601 and 2–602(a). Mr. Waters did not, however, file a new notice of appeal after the final judgment.

The Court of Special Appeals, without noticing the procedural irregularity, affirmed the order granting USF & G's motion for summary judgment. In an unreported opinion, the intermediate appellate court held that Mr. Schreier was not driving an uninsured vehicle because his $100,000 limit of liability was equal to Mr. Waters's $100,000 per person limit of uninsured motorist coverage. The Court of Special Appeals determined that the per accident limit under the USF & G policy was inapplicable because only one claim was being made against that policy.

Mr. Waters thereafter filed a petition for a writ of certiorari which was granted by this Court.

## I.

As previously indicated, the trial court's order from which the appeal was taken, *i.e.* the order granting USF &

G's motion for summary judgment, was not effective as a final appealable judgment because of the trial court's failure to make an express determination that there was no just reason for delay. Furthermore, a new notice of appeal was not filed after a proper final judgment. Under such circumstances, prior to a recent change in the Maryland Rules effective July 1, 1988, we would have been required to vacate the judgment of the Court of Special Appeals and direct that the intermediate appellate court dismiss the appeal. *See Blucher v. Ekstrom, supra,* 309 Md. at 462–463, 524 A.2d at 1237, and cases there cited.

Present Rule 8–602(e), however, effective July 1, 1988, provides in pertinent part as follows:

"(e) **Entry of Judgment Not Directed Under Rule 2–602.—**

(1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the lower court to decide whether to direct the entry of a final judgment, (C) enter a final judgment on its own initiative or (D) if a final judgment was entered by the lower court after the notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of the judgment."

\*    \*    \*    \*    \*    \*

"(3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal."

The trial court in this case had discretion to enter a final judgment under Rule 2–602(b), intended to do so, and would have accomplished such purpose if it had made the requisite written determination. Consequently, we shall exercise our discretion under Rule 8–602(e)(1)(C), enter a final judgment

on our own initiative, treat the notice of appeal as properly filed, and proceed with the case. *See Shofer v. Hack Co.,* 324 Md. 92, 98, 595 A.2d 1078, 1080–1081 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992); *Kamin–A–Kalaw v. Dulic,* 322 Md. 49, 54, 585 A.2d 216, 218–219 (1991); *Quartertime Video v. Hanna, supra,* 321 Md. at 63 n. 4, 580 A.2d at 1075 n. 4.

## II.

Since 1973, Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c), has required every motor vehicle insurance carrier to offer certain minimum uninsured motorist coverage in every motor vehicle insurance policy issued in Maryland. By Ch. 562 of the Acts of 1975, § 541(c) was amended to require that every motor vehicle insurance policy issued in Maryland contain minimum uninsured motorist coverage in the amount required under Title 17 of the Transportation Article, *i.e.* $20,000 per person and $40,000 per accident. Prior to further amendments to § 541 of the Insurance Code in 1981, we had stated that the purpose of the uninsured motorist provisions was "that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law." *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 737, 436 A.2d 465, 474 (1981), quoting *Webb v. State Farm Mutual Automobile Ins. Co.,* 479 S.W.2d 148, 152 (Mo.App.1972). The effect of this mandatory coverage was to "provid[e] minimum protection to individuals injured by uninsured motorists." *Yarmuth v. Gov't Employees Ins. Co.,* 286 Md. 256, 264, 407 A.2d 315, 319 (1979). The pre–1981 statutory scheme did not expressly define "uninsured motor vehicle."

The statutory provisions for uninsured motorist coverage, prior to 1981, allowed an insured to recover from his own uninsured motorist policy when he was injured either by a tortfeasor who did not have liability insurance or by a tortfeasor who carried liability insurance in an amount less than the minimum required by the financial responsibility

law. *See McKoy v. Aetna Cas. & Sur. Co.*, 281 Md. 26, 27, 374 A.2d 1170, 1171 (1977).[3] There was no provision requiring an insurer to offer an insured the opportunity to purchase uninsured motorist coverage in excess of the $20,000/$40,000 minimum.

By Ch. 510 of the Acts of 1981, the General Assembly amended § 541(c) and, *inter alia,* defined an uninsured motor vehicle. The concept of "uninsured" was broadened to include any vehicle insured with liability limits in an amount "less than the amount of coverage provided to the insured under this subsection." The General Assembly in § 541(c) also required that insurers "shall [make] available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article [$20,000/$40,000] if these amounts do not exceed the amounts of the motor vehicle liability coverage provided by the policy." § 541(c)(2).[4] Finally, the General Assembly added § 541(c)(3) which provides that

"[t]he limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of

---

3. Beginning January 1, 1973, every motor vehicle insurance policy issued in Maryland was required to contain minimum personal injury liability coverage of $20,000/$40,000. A tortfeasor insured under a policy issued in a state other than Maryland, however, could have a limit of personal injury liability insurance in an amount less than the $20,000/$40,000 limit required by Maryland law. This scenario occurred in *McKoy v. Aetna Cas. & Sur. Co.*, 281 Md. 26, 374 A.2d 1170 (1977). In that case, the plaintiff, Linda McKoy, was injured in an automobile accident by a tortfeasor who carried $10,000 in personal injury liability coverage. The tortfeasor's policy was issued in the District of Columbia, and $10,000 was the minimum personal injury liability coverage then required under District law. Because the limits of the tortfeasor's insurance was less than the $20,000 carried by the plaintiff under her uninsured motorist coverage, the tortfeasor was deemed an "uninsured motorist" and Ms. McKoy was permitted to collect from her uninsured motorist carrier.

4. It is noteworthy that the General Assembly by Ch. 641 of the Acts of 1992 has recently amended this section of the Insurance Code to require an insurer to provide an insured with uninsured motorist coverage in an amount equal to that insured's liability coverage unless the insured affirmatively chooses to waive this coverage.

that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured."

The legislative history of the 1981 amendments demonstrates that their purpose was to provide an insured with the option of purchasing underinsured motorist coverage. *See Hoffman v. United States Services Auto Ass'n*, 309 Md 167, 178–179, 522 A.2d 1320, 1325 (1987). The amendments allow an insured to purchase a higher amount of uninsured motorist insurance which will become available when the insured's uninsured motorist coverage, as well as his damages, exceed the liability coverage of the tortfeasor.

According to a committee report contained in the Department of Legislative Reference's file on Senate Bill 17, which became Ch. 510 of the Acts of 1981, the 1981 amendments make uninsured motorist coverage operate as underinsured motorist coverage.[5] The committee report

---

5. There are several definitions of uninsured motorist coverage throughout the country. For a discussion of the different theories, *see* L. Russ, Annotation, *Uninsured and Underinsured Motorist Coverage: Recoverability, Under Uninsured or Underinsured Motorist Coverage, of Deficiencies in Compensation Afforded Injured Party by Tortfeasor's Liability Coverage,* 24 A.L.R.4th 13 (1983). The two main theories are that underinsured motorist coverage provides "excess" coverage and that underinsured motorist coverage is "gap" coverage.

Under the "excess" theory a tortfeasor is underinsured when the injured party's damages exceed the tortfeasor's liability coverage. *See American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 521 (Iowa 1985); *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283–284 (1991); *State Auto. Mut. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737, 748–749 (1990).

Under the "gap" theory a tortfeasor is underinsured when the injured party's uninsured motorist coverage exceeds the tortfeasor's liability coverage. *See Home Ins. Co. v. Maldonado,* 515 A.2d 690, 693 (Del.1986); *Connolly v. Royal Globe Ins. Co.,* 455 A.2d 932, 935 (Me.1983); *Thompson v. Nodak Mut. Ins. Co.,* 466 N.W.2d 115, 117 (N.D.1991).

Maryland is a "gap" theory State under § 541(c). In *Hoffman v. United Services Auto Ass'n,* 309 Md. 167, 174, 522 A.2d 1320, 1323 (1987), we stated that "[u]nderinsured motorist coverage applies when an insured is involved in an accident with a motorist, who may carry extensive liability insurance ..., but whose liability coverage is less than the insured's underinsured motorist coverage."

also states that the scheme contemplated by the amend-ments will function as follows (Committee Report, contained in the Department of Legislative Reference's file on Senate Bill 17 (1981)):

"When an uninsured motor vehicle is involved in an automobile accident causing injury, the injuries shall be compensated for by the insurance company which insures the person injur[ed], to the limits of the UM coverage.... Senate Bill 17 mandates that all companies offer higher limits than 24/40, e.g. 100/300.

"As it stands now, if you sued a person who has insurance in the minimal limits of 20/40 and obtained a judgment for say $50,000.00 you would collect $20,000.00 from the guilty party and have no source to satisfy the balance of your judgment, *i.e.* $30,000.00.

"S.B. 17 [Ch. 510] will do this. The $30,000 will be paid from the injured party's own UM coverage if the injured party has UM coverage in excess of the guilty party's liability coverage. So that if the guilty party had 20/40 and the injured party had UM coverage of 20/40 the injured party obviously would have no source from which to collect the excess verdict."

It follows that if the tortfeasor had $20,000/$40,000 liability coverage and the injured party had uninsured motorist coverage of $100,000/$300,000, the injured party could sat-isfy the balance of a judgment from his uninsured motorist policy.

■ As this legislative history clearly demonstrates, "the amount of coverage provided to the insured under this, [the uninsured motorist] subsection," § 541(c), is the amount of uninsured motorist coverage the insured chooses to purchase, up to the limits of his liability coverage, including any such insurance purchased in excess of the statutory minimums. Consequently, a tortfeasor is an unin-sured motorist, as defined by § 541(c), whenever the amount of uninsured motorist coverage purchased by the insured exceeds the amount of liability insurance carried by the tortfeasor.

■ The 1981 changes to the Insurance Code provide an injured insured with resources equal to those which would have been available had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company. *See Higgins v. Fireman's Fund Ins. Co.*, 160 Ariz. 20, 22, 770 P.2d 324, 326 (1980); *American Motorists Ins. Co. v. Gould*, 213 Conn. 625, 631, 569 A.2d 1105, 1109 (1990); *Home Ins. Co. v. Maldonado*, 515 A.2d 690, 694 n. 8 (Del.1986); *Dewberry v. Auto–Owners Ins. Co.*, 363 So.2d 1077, 1081 (Fla.1978); *Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 935 (Me.1983); *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 219, 704 P.2d 1092, 1095 (1985); *Britton v. Safeco Ins. Co. of America*, 104 Wash.2d 518, 522–523, 707 P.2d 125, 129 (1985).

■ Under this scheme, a court must compare the amount of liability insurance carried by the tortfeasor with the amount of uninsured motorist coverage carried by the injured party. In the present case, we must determine if Mr. Waters's uninsured motorist coverage exceeds the amount of liability coverage purchased by the tortfeasor, Mr. Schreier. Mr. Schreier carried liability coverage of $100,000 per person and $100,000 per accident. Mr. Waters carried uninsured motorist coverage of $100,000 per person and $300,000 per accident. Two people were injured in this accident, and thus the per accident limitation is critical. If Mr. Schreier had carried the same liability coverage, *i.e.* $100,000 per person and $300,000 per accident, as provided for in Mr. Waters's uninsured motorist policy, Mr. Waters would have recovered up to the per person limit of $100,000 from the Schreier liability policy regardless of the $97,000 recovery by Ms. Dunham. Mr. Waters's uninsured motorist coverage thus exceeds the liability coverage carried by Mr. Schreier.

Consequently, under the statutory scheme and the facts of this case, Mr. Schreier was an uninsured motorist with respect to the injuries sustained by Mr. Waters. Mr. Waters may proceed against his uninsured motorist carrier,

USF & G, for the remainder of his damages, up to the per person limit of $100,000. USF & G argues that because only one person is claiming uninsured motorist benefits under its policy, the only relevant limit is the per person limit of $100,000. As previously stated, this approach is inconsistent with the language and purpose of the uninsured motorist statute as amended in 1981. Mr. Waters's uninsured motorist coverage exceeds Mr. Schreier's liability coverage because Mr. Waters would have had available a separate per person limit of $100,000 had Mr. Schreier carried liability coverage of $100,000 per person and $300,000 per accident.

## III.

The remaining issue in this case concerns the effect of the settlement between Mr. Schreier and Mr. Waters upon USF & G. As previously mentioned, Mr. Schreier and Mr. Waters settled their dispute for $75,000, and Mr. Schreier entered into a consent judgment in favor of Mr. Waters for this amount.

The plaintiff argues that this Court, on remand, should direct the trial court to enter a judgment in his favor for $72,000, plus interest.[6] The plaintiff states that the USF & G policy requires only that USF & G be given notice of the pendency of a suit resulting in damages and that USF & G have a reasonable opportunity to protect its interests. The plaintiff notes that a settlement was reached and a consent judgment was entered against Mr. Schreier in the amount of $75,000, that USF & G was given notice of the suit and in fact was a defendant, and that USF & G had the opportunity to protect its interests in the suit. Therefore, according to the plaintiff, USF & G is bound by the settlement.

---

6. The figure of $72,000 is calculated by subtracting $3,000 available to Mr. Waters under Mr. Schreier's policy with Continental Insurance Company from the $75,000 settlement figure. *See* Art. 48A, § 541(c)(3).

■ USF & G contends that because it did not consent to the settlement between Mr. Schreier and Mr. Waters, it could not be bound by the settlement under the terms of the insurance policy. At oral argument before us, USF & G indicated that the uninsured motorist provisions of the policy contained a clause requiring USF & G's consent to any settlement between its insured and an uninsured tortfeasor. USF & G urges that, if it is held liable under its uninsured motorist coverage, this Court should remand the case for a full trial on the issues of liability and damages.

USF & G's policy provides in relevant part as follows: "We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle....

"No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:

"1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

"2. Had a reasonable opportunity to protect our interests in the suit."

Contrary to USF & G's suggestion at oral argument, the USF & G policy does not contain a clause requiring Mr. Waters to obtain USF & G's consent before settling his claim with Mr. Schreier.[7]

---

7. In *Reese v. State Farm Mut. Auto Ins. Co.*, 285 Md. 548, 554–555, 403 A.2d 1229, 1232–1233 (1979), we held that an insurance company could not require an insured to obtain a judgment from the uninsured tortfeasor as a precondition to the insured's recovery under uninsured motorist coverage. In *Nationwide Mutual Ins. v. Webb*, 291 Md. 721, 436 A.2d 465 (1981), we held that a "consent to sue" clause which provided that no judgment, on either liability or damages, would be binding on an insurance company "unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the [Insurance] Company," was invalid under Maryland law. 291 Md. at 725, 436 A.2d at 468. In the present case, USF & G's policy does not require, and indeed could not require, either that a judgment be obtained or that USF & G consent to the entry of a judgment as a condition for its insured to obtain benefits under the uninsured motorist endorsement in the policy.

Consent to settle clauses are generally held to be valid. *See Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 740, 436 A.2d at 476, and cases there cited. In *Webb* this Court discussed consent to settle clauses, and we held that, by inserting such a clause in its policy, an insurance company could protect itself in the situation in which its insured and an uninsured motorist settle a tort suit. We stated, in language directly applicable to USF & G in the present case, as follows (291 Md. at 739–740, 436 A.2d at 476):

"The insurer, in oral argument before us, pointed to the possibility that the insured and the uninsured motorist would settle the tort suit, thereby depriving the insurance company of the right to assert defenses. However, the insurer can easily protect itself from being bound by such settlement. The standard uninsured motorist endorsement ... requires the insurer's consent to any settlement with the uninsured motorist. Unlike 'consent to sue' clauses, 'consent to settle' clauses are generally upheld, at least to the extent that settlements, consent judgments, releases, covenants not to sue, etc. between insureds and the uninsured motorists are not binding upon insurers unless the insurers have given their consent."

As USF & G did not provide a "consent to settle" clause in its policy, it failed to utilize this method of protecting itself.[8]

USF & G's policy states that the insurer is obligated to "pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." The Maryland Insurance Code contains essentially the same language in the provisions relating to the mandatory uninsured motorist coverage. *See* Art. 48A, § 541(c)(2). Where there is a tort suit by the insured against the uninsured motorist, the damages which

---

**8.** Even where there is a consent to settle clause in the policy, under some circumstances courts have held that the insurer's denial of coverage has been deemed to waive the insurer's rights under the consent to settle clause. *See Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 743 n. 11, 436 A.2d at 478 n. 11, and cases there cited. We have no occasion in the instant case, however, to explore this matter.

the insured is "legally entitled to recover" are those determined by the judgment in or the settlement of the tort action. *See Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 732–739, 436 A.2d at 472–475. *Cf. Allstate v. Atwood,* 319 Md. 247, 261, 572 A.2d 154, 161 (1990), and cases there cited. Thus, in the absence of a consent to settle clause, an insurer who had notice of the pending tort suit is ordinarily bound by the settlement of the suit.

This general rule is not unfair to an uninsured motorist carrier who had notice of the tort action by the insured against the alleged tortfeasor. Even if the insurer had initially failed to protect itself by inserting a consent to settle clause in its policy, the insurer is entitled to intervene in the tort action as a defendant "and to defend against the insured's tort claim ... regardless of whether the uninsured motorist is defending or not," *Nationwide Mutual Ins. v. Webb, supra,* 291 Md. at 738, 436 A.2d at 475.[9] Moreover, by being named as a defendant in or by intervening in the tort action, the insurer may ordinarily litigate in that action a policy coverage issue as well as the underlying tort liability and damages issues. *Webb,* 291 Md. at 742–743, 436 A.2d at 477–478.

In the present case, USF & G did not in the trial court attempt to litigate the issues of the defendant Schreier's alleged negligence and the plaintiff's damages. USF & G sought judgment solely on a policy coverage ground. The tort action ultimately concluded in the trial court without any attempt by USF & G to protect itself by "defend[ing] against the insured's tort claim," *Webb,* 291 Md. at 738, 436 A.2d at 475.

---

9. Although a tort defendant's liability insurer may not ordinarily intervene in the pending tort action prior to verdict or judgment, *Allstate v. Atwood,* 319 Md. 247, 255–259, 572 A.2d 154, 158–160 (1990), a plaintiff's uninsured motorist carrier is entitled to intervene in the tort action. *Washington Transit v. Queen,* 324 Md. 326, 332 n. 5, 597 A.2d 423, 426 n. 5 (1991); *Lane v. Mut. Ins. Co.,* 321 Md. 165, 582 A.2d 501 (1990).

Thus, USF & G did not choose to utilize either of the two methods set forth in the *Webb* case for an uninsured motorist carrier to protect itself from an allegedly inappropriate settlement between its insured and the uninsured tortfeasor. Under these circumstances, it would not be consistent with *Webb* and other cases for us to direct that, upon remand, the plaintiff should be required to litigate with USF & G the issues of tort liability and damages. When the uninsured motorist carrier fails to include a consent to settle clause in the uninsured motorist provisions of the policy, and when the carrier, with notice of the tort suit, does not attempt to litigate at trial the underlying tort issues of liability and/or damages, the carrier will ordinarily be bound by a settlement of the tort suit entered into between its insured and the uninsured tortfeasor.

There are in this case, however, certain circumstances which persuade us to order limited further proceedings in the circuit court. In its motion for summary judgment, USF & G raised the issue of policy coverage as a threshold matter. No party objected to resolving policy coverage prior to determining tort liability and damages. When the issue of policy coverage was decided in favor of USF & G, it was the plaintiff Waters who filed the motion for a Rule 2–602(b) certification making the judgment in favor of USF & G final. As stated in Part I of this opinion, the trial judge did not properly direct the entry of a final judgment under Rule 2–602(b). Nonetheless, the parties and the trial court treated the judgment in favor of USF & G as final and proceeded as if the insurer were no longer a party in the case before the circuit court. Thus, the record indicates that USF & G did not receive notice of the settlement conference scheduled by the circuit court or notice of the entry of the consent judgment.

In a similar situation we can conceive of an instance in which the uninsured motorist and the insured collusively enter into an unfair or unreasonably high settlement in the hope that the coverage issue will be reversed on appeal and

that the carrier will be bound by the unreasonable settlement.[10] As we stated in *Allstate v. Atwood, supra,* 319 Md. at 263, 572 A.2d at 161–162, "while the insurance company promised to pay in accordance with the legal obligations resulting from the tort action, it did not undertake to be the victim of fraud or collusion."

Consequently, given the peculiar circumstances of this case, we shall direct that the case be remanded to the circuit court for further proceedings. On remand, the trial judge's initial inquiry will be a narrow one. The judge should determine whether the settlement was fair and reasonable. *Cf. Allstate v. Atwood, supra.* If the trial judge determines that the settlement was fair and reasonable, then there is no reason to relieve USF & G of its obligation to pay the damages which Mr. Waters is "legally entitled to recover" from Mr. Schreier. In such event, judgment for the plaintiff for $72,000 plus interest should be entered. On the other hand, if the trial judge determines that the settlement was not fair and reasonable, then USF & G should be allowed to litigate the issues of liability and damages as if the settlement agreement did not exist.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY

---

10. By this, we do not mean to intimate that the settlement in the instant case was unfair or unreasonable. We note that the record in this case indicates that Mr. Schreier was across the center line when he collided with Ms. Dunham's pick up truck. Moreover, the Continental Insurance Company assessed Mr. Waters's damages at $83,000, and Mr. Waters and Mr. Schreier settled the case for $75,000. In light of these facts, it seems unlikely that the settlement was unfair or unreasonable. Nevertheless, we leave this determination to the circuit court on remand.

THE RESPONDENT UNITED STATES FIDELITY &
GUARANTY COMPANY.