REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND


No.  0100

September Term, 2014


ALLSTATE INSURANCE COMPANY

v.

AUSTRIA KPONVE


Eyler, Deborah S.
Reed,
Salmon, James P.
    (Retired, Specially Assigned),

JJ.


Opinion by Salmon, J.


Filed: October 28, 2015

The parties to this appeal are appellant, Allstate Insurance Company ("Allstate"), and appellee, Austria Kponve ("Mrs. Kponve"). At all times here pertinent, Allstate provided underinsured motorist coverage to Mrs. Kponve.

On April 10, 2009, while Allstate's policy was in force, Mrs. Kponve was involved in an automobile accident with a motorist named Douglas Leonel Mendoza ("Mendoza"). Mrs. Kponve sued Mendoza in the Circuit Court for Montgomery County alleging that Mendoza's negligence resulted in severe injury to her.[1] Allstate filed a motion to intervene in the lawsuit in which it alleged that Mrs. Kponve and her husband had a contract of insurance with Allstate and that Mendoza "may be or is" an underinsured motorist as defined in that policy. The motion to intervene further alleged that under the policy issued to the Kponves, Allstate "will or may be bound by any judgment entered against" Mendoza. Lastly, Allstate alleged that Allstate's interest "may or may not be adequately represented by the existing parties who have failed to include Allstate . . . as a [d]efendant." The motion to intervene was granted. Afterwards, Mendoza's insurance carrier settled Mrs. Kponve's claim against Mendoza for Mendoza's policy limits, which left Allstate as the only remaining defendant.

Prior to trial, counsel for the parties stipulated to the fact that Allstate issued Mrs. Kponve an automobile insurance policy that provided her with uninsured/underinsured motorist coverage and that, on the date of the subject accident, that policy was in effect. The

---

[1]Originally, the plaintiffs were Mrs. Kponve and her husband, Kankoue Kponve. The complaint included a count alleging loss of consortium. The loss of consortium count was later dismissed, which left Mrs. Kponve as the sole plaintiff.

parties did not stipulate, however, as to the amount of the uninsured/underinsured coverage or as to the amount of setoff, if any, Allstate was entitled to as a result of the settlement by Mendoza's carrier.

In May of 2013, a two-day jury trial was held in the Circuit Court for Montgomery County. At the conclusion of the trial, the jurors answered several questions set forth on a special verdict sheet. The jury found that: 1) Mrs. Kponve was not contributorily negligent; 2) Mendoza's negligence caused Mrs. Kponve's injuries; and 3) the damage suffered by Mrs. Kponve, as a result of the subject accident, totaled $374,000.[2]

The clerk entered a judgment in favor of Mrs. Kponve and against Allstate in the amount of $374,000, even though Allstate's liability to Mrs. Kponve under its contract had never been established. Within ten days of the entry of that judgment, Allstate filed what it called a "Motion to Alter or Amend Judgment," in which it alleged: 1) the underinsured motorist limits set forth in Mrs. Kponve's policy were $50,000 per individual; and 2) that the insurance carrier for Mendoza had settled Mrs. Kponve's claim against Mendoza for $25,000, which was the liability limit under Mendoza's policy. According to Allstate, the court should therefore reduce the judgment against it to $25,000. The trial judge, after hearing argument, took the matter under advisement. About six months later, the court issued an order denying Allstate's motion. No explanation was given for the denial of the

---

[2]The jury broke the damages down as follows: $35,000 for past medical expenses; $39,000 for past lost earnings; $300,000 for past and future non-economic damages.

motion. This timely appeal followed.

## I.

## BACKGROUND FACTS

On the morning that trial commenced, the following colloquy occurred:

[Allstate's counsel]: [Y]our honor, as far as insurance issues are concerned, we're not raising any issues that there wasn't a policy - -

THE COURT: Yeah.

[Allstate's counsel]: - - or that the plaintiff didn't pay it. We're just going strictly with was the putative uninsured driver actually negligent or not? That's the only issue we really - -

[Mrs. Kponve's counsel]: That's fine.

THE COURT: Okay.

[Mrs. Kponve's counsel]: So I don't know if we can stipulate ahead of time that there was a policy in force. My client's prepared to testify to - -

[Allstate's counsel]: Yeah, yeah, we can stipulate to that. It has policy limits of $50,000 per - -

THE COURT: You think they need to know that the policy limits?

[Allstate's counsel]: No, I don't think they need to know, but I just think - -

THE COURT: No.

[Allstate's counsel]: - - you need to know, your honor, in case - -

| | |
|---|---|
| THE COURT | Right, yeah. |
| [Allstate's counsel]: | - - there's a - - |
| THE COURT: | In case if it goes - - |
| [Allstate's counsel]: | - - verdict of $12 million, that I feel both chastens [sic], but desirous of - - concerning the policy limits. |
| [Mrs. Kponve's counsel]: | And then - - |
| THE COURT: | If there's a verdict of $12 million and this court doesn't take appropriate action, I think that this - - you will probably text [sic] this case to the Court of Appeals. |

As can be seen, although Allstate's counsel represented to the court that the policy it issued to Mrs. Kponve had "policy limits of $50,000 per - - ," Mrs. Kponve's counsel did not indicate, one way or the other, whether he agreed with that representation. Shortly after the colloquy just quoted, the following exchange occurred:

| | |
|---|---|
| [Allstate's counsel]: | Okay, Allstate Insurance Company is their uninsured motorist - - is the plaintiff's uninsured[3] motorist carrier, and is asserting that Mr. Mendoza was not negligent, and that if anyone was negligent, it was the plaintiff. |
| THE COURT: | Okay. |
| [Mrs. Kponve's counsel]: | Well, that's not the stipulation. I think the stipulation |

---

[3]Counsel for Allstate used the term "uninsured motorist" as synonymous with "underinsured motorist." This word usage was correct because under Md. Code (2011 Repl. Vol.) Insurance Article, section 19-509(a)(2)(ii) the term "uninsured motorist" includes "underinsured motorist."

was that there was a policy in place.

THE COURT: See why we're doing this now? Go ahead.

[Allstate's counsel]: Okay.

[Mrs. Kponve's counsel]: That there was an uninsured motorist policy in place, and Mrs. Kponve had paid all her premiums and defendant Allstate has denied payment because it believes Mr. Mendoza was not negligent.

THE COURT: That's fine. That just - - it adds an important factor here, that there's an uninsured motorist policy, that all premiums were paid, the plaintiff is the insured, and that Allstate contends that Mr. Mendoza is not negligent. So you'll state that to the jury. All right.

Pursuant to the foregoing agreement, Allstate's counsel, in his opening statement, told

the jury the following:

I'm here representing the Allstate Insurance Company.

You may not have noticed this before, but when you buy insurance in the State of Maryland, the State requires you to also buy what is called uninsured motorist coverage. That is to protect you under various legal circumstances, which are not at issue in this case.

Nonetheless, this is the claim under that portion of policy. And that policy was in effect. And Allstate's not - - dispute that. We don't dispute the happening of the accident. And we certainly agree that the plaintiff was - - got the injury.

However, in this case, Allstate Insurance Company does step into the shoes of Mr. Mendoza and have the defenses that Mr. Mendoza could assert.

Counsel then told the jury that it was Allstate's position that Mendoza was not

-5-

negligent.[4]

As mentioned earlier, Allstate filed a timely post-trial motion, in which it asserted that the judgment in the above-captioned case should be reduced to $25,000. In its motion, Allstate made the following representation: 1) that its contract with Mrs. Kponve had underinsured motorist coverage with a limit of $50,000 per person; 2) that Mendoza's insurer, AMI Insurance Group - American Independent Companies, Inc., under policy no. 3433976, settled with Mrs. Kponve for its policy limits of $25,000; and that Allstate waived its subrogation rights against Mendoza in return for Mendoza's agreement to appear at trial.

Allstate asked the court to "reduce the verdict amount to the policy limits of $50,000 and credit Allstate Insurance Company with the $25,000 paid by Mr. Mendoza's insurer and enter a judgment in the amount of $25,000."

In its accompanying memorandum of law, Allstate relied primarily on language used in *Allstate Ins. v. Miller*, 315 Md. 182 (1989). Mrs. Kponve filed an opposition to Allstate's post-trial motion in which she contended that once Allstate intervened in the tort case filed against Mendoza, it had the obligation to plead and prove its contractual defenses and if it failed to do so, it was bound by the jury verdict and the court's judgment.

---

[4]The accident that resulted in a trial in this case occurred in Montgomery County at the intersection of Viers Mill Road and Connecticut Avenue. Mrs. Kponve maintained at trial that, while proceeding on a green arrow, she lawfully made a left turn across Viers Mill Road at which time she was struck by a vehicle driven by Mendoza. Mendoza, on the other hand, testified that the light was green (for him and other through motorists proceeding on Viers Mill Road) at the time he entered the intersection and struck Mrs. Kponve's vehicle. The jury believed Mrs. Kponve's version.

Mrs. Kponve concluded her memorandum in opposition to Allstate's motion with the following statement:

> Plaintiff submits that it is wholly inappropriate and unjust for Allstate, having rolled the dice at trial and lost, to now be able, outside the presence of the jury and in post-trial papers, to whittle down the $374,000 verdict to a mere $25,000 judgment based on an argument it had never raised in its answer or in its motion to intervene. If nothing else, Allstate's motion to alter or amend should be denied because it never sought to protect its own interests in this regard by counter-claiming against Mrs. Kponve in order to keep the issue ripe for litigation. At this point, a $374,000 judgment has been entered against this Defendant, and there is no reason to change that.

A hearing on Allstate's post-trial motion was held on August 30, 2013. At the commencement of the hearing, counsel for Allstate proffered what it contended was the policy of insurance that it issued to Mrs. Kponve and was in effect at the time of the accident. Allstate's counsel argued, *inter alia*, that at trial Mrs. Kponve had the burden of proof as to the contract provisions but that neither party had introduced the policy into evidence. Counsel for Allstate also represented, once again, that the policy limits for underinsured motorist coverage was $50,000 per person and that the claim against Mendoza had "settled for $25,000." Counsel for Allstate added that in discovery his client had provided the number of the Allstate policy that was in effect and, if plaintiff contended that this was not the policy, the party with the "burden of proof [was required] to prove something opposite."

Mrs. Kponve's counsel argued that the insurance contract proffered to the court by Allstate was "inadmissible at this point." Counsel worded his argument as follows:

-7-

Your honor, I'd object to the admission of that [insurance policy] at this time. It's inadmissible at this point on a motion for post[-]trial. An attorney can't come in and yank a piece of paper out three months after the trial and say, "We forgot to put this in the record." There's nothing in the record before you as of this moment, and they're now trying to place a document in the record that has not been authenticated, that we've never seen until today.

Counsel for Mrs. Kponve also argued that "this is purely a contract case" not a negligence case. Her counsel maintained that the case was a contract action "because the negligent driver was dismissed, so the only parties here are the insurer and the insured on a contract case." In the words of Mrs. Kponve's counsel: "It's not our burden to prove there's a limitation once they've stipulated that 'Yes, we will cover your damages by this contract that you've paid the premiums on.' The burden is on them."[5]

In his argument, counsel for Mrs. Kponve criticized Allstate for failing to prove the insurance contract by a "demand for admission" or a "motion for partial summary judgment." Counsel for Mrs. Kponve also argued that the issue before the court was controlled by *Allstate Ins. v. Miller*, *supra*, and asserted that:

> Now there are reasons why a plaintiff should not agree to this [*i.e.*, stipulate as to policy limits], and why the burden should be placed on Allstate - - if they want a [sic] claim there's a limitation in a certain amount. There are hundreds of thousands of Maryland drivers and passengers, and to think that all these drivers and passengers know exactly what their policy says and where it is and which amendment is in place at which time, is placing <u>too much of a burden on the plaintiff</u>. Some plaintiffs don't even speak very well the language that the policy is drafted in. <u>And therefore it's perfectly appropriate</u>

---

[5]Contrary to the implied argument of Mrs. Kponve's counsel, Allstate never stipulated that it would "cover" all of Mrs. Kponve's tort damages.

to tell Allstate that if you think there's a limit here, prove it. You don't have to prove it to the jury, but at least put it in the record as was twice done in *Miller*, and not done whatsoever until today.

(Emphasis added.)

Counsel for Mrs. Kponve further argued:

So it's our position they ought to do what all other attorneys have to do. When something's not stipulated to, you put it in the record. You prove it. And there are at least 10 different ways they could have done that in pre[-]trial and trial without showing it to the jury.

Counsel for Allstate, in response to the argument that insureds could not be expected

to know the contents of their policies, stated:

[P]eople are held responsible for knowing what the contents of their own contracts - - especially if they are going to be filing lawsuits regarding those, especially if they're represented by attorneys, especially if they have a burden of proof.

(Emphasis added.)

## II.

## PRELIMINARY MATTERS

Mrs. Kponve, citing Md. Rule 8-131(a), claims that the issue of whether she or Allstate had the burden of proof is not properly before this court. Md. Rule 8-131(a) provides, in pertinent part, that ordinarily, except for matters of subject matter or personal jurisdiction, an appellate court "will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]" Contrary to appellee's argument, the issue of which party had the burden of proof clearly was raised in the trial

court. After all, the entire thrust of appellee's opposition to Allstate's post-trial motion was that Allstate's motion should be denied because Allstate failed to meet its burden of proof regarding how much was owed to Mrs. Kponve under her policy. Moreover, that issue was decided by the trial court, at least implicitly, because if the trial judge did not believe that Allstate had the burden of proof, there would be no other possible basis to sustain the $374,000 judgment against Allstate. Moreover, as shown by the facts set forth in Part I of this opinion, appellant did argue in support of its post-trial motion that Mrs. Kponve had the burden of proving contract damages.

Appellee's brief can be interpreted as meaning that Mrs. Kponve contends that Allstate, at no time prior to the return of the jury verdict, argued that appellee had the burden of proving her contract damages – and it was therefore too late to bring the matter up on post-trial motion. If that is appellee's argument, it has no merit. The amount of contract damages was not an issue in the tort action decided by the jury and in fact might never be an issue unless: 1) the jury ruled against the underinsured as to liability; 2) the verdict against the underinsured motorist exceeded the policy limits under the policy held by the underinsured motorist; 3) the parties disagreed as to the amount due under the contract; and 4) Mrs. Kponve brought a breach of contract action to determine what was due to her under her policy. *See West American Insurance Company v. Popa*, 352 Md. 455, 463 (1998).

Appellee, in her brief, devotes considerable attention to the issue of whether the insurance policy proffered by Allstate was properly authenticated, or whether it should have

-10-

been attached to Allstate's post-trial motions, as opposed to simply being submitted to the court about three months after the jury verdict was returned. We agree with appellee that the policy was not properly authenticated and therefore should not be considered by the court. But this is inconsequential unless the trial court was correct when it (impliedly) found that Allstate had the burden of proving that under its policy it owed Mrs. Kponve something less than $374,000.

### III.

### ANALYSIS

The central issue presented in this appeal is whether, as appellee contends, Allstate had the burden of proving: 1) the amount of underinsured motorist coverage; and 2) the amount, if any, of credit Allstate was entitled to receive as a result of the settlement by Mendoza's carrier.

Since July 1, 1975, every motor vehicle liability insurance policy issued, sold or delivered in Maryland, has been required to contain coverage in certain minimum amounts for damages, subject to policy limits, that:

> (1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

> (2) a surviving relative of the insured, who is described in § 3-904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

-11-

Maryland Code (2011 Repl. Vol.) Insurance Article 19-509(c).

Section 19-509 of the Insurance Article provides, in relevant part:

(d) *Form and conditions of coverage.* – The uninsured motorist coverage required by this section shall be in the form and subject to the conditions that the Commissioner approves.

(e) *Amount of coverage.* – (1) The uninsured motorist coverage contained in a motor vehicle liability insurance policy:

> (i) shall at least equal:
> 1. the amounts required by Title 17 of the Transportation Article; and
> 2. the coverage provided to a qualified person under Title 20, Subtitle 6 of this article: and
> (ii) may not exceed the amount of liability coverage provided under the policy.

> (2) Unless waived in accordance with § 19-510 of this subtitle, the amount of uninsured motorist coverage provided under a private passenger motor vehicle liability insurance policy shall equal the amount of liability coverage provided under the policy.

The term "uninsured motor vehicle" includes motor vehicles operated by individuals

that are "underinsured." This is made clear by section 19-509(a) of the Insurance Article,

which reads:

> (a) *"Uninsured motor vehicle" defined.* – In this section, "uninsured motor vehicle" means a motor vehicle:
> (1) the ownership, maintenance, or use of which has resulted in the bodily injury or death of an insured; and
> (2) for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds, and securities applicable to bodily injury or death;
> (i) is less than the amount of coverage provided under this section; or
> (ii) has been reduced by payment to other persons of claims arising

-12-

from the same occurrence to an amount less than the amount of coverage provided under this section.

*See also West American Insurance Co. v. Popa*, *supra*, 352 Md. at 462.

Uninsured/underinsured recovery by the policyholder only becomes available when the policyholder's damages "exceed the liability coverage of the tortfeasor." *Erie v. Heffernan*, 399 Md. 598, 612 (2007) (quoting *Waters v. U.S. Fid. & Guar. Co.*, 328 Md. 700, 712 (1992).

In *Waters*, *supra*, the Court provided a good explanation as to how uninsured/underinsured cases are to be adjudicated. In that case: 1) the negligent party (Schreir) had liability limits of $100,000 per person/$100,000 per accident; 2) the accident in which Schreir was involved injured two persons, one of whom (Mrs. Dunham) settled with Schreir's insurer for $97,000; and 3) the second person injured (Waters) had uninsured motorist coverage provided by United States Fidelity & Guaranty Corp. (USF&G), with $100,000/$300,000 limits. *Waters*, 328 Md. at 705-07. In *Waters*, when discussing a contract action by Waters against USF&G, the Court said:

> Under this scheme, a court <u>must compare the amount of liability insurance carried by the tortfeasor with the amount of uninsured motorist coverage carried by the injured party</u>. In the present case, we must determine if Mr. Waters's uninsured motorist coverage exceeds the amount of liability coverage purchased by the tortfeasor, Mr. Schreier. Mr. Schreier carried liability coverage of $100,000 per person and $100,000 per accident. Mr. Waters carried uninsured motorist coverage of $100,000 per person and $300,000 per accident. Two people were injured in this accident, and thus the per accident limitation is critical. If Mr. Schreier had carried the same liability coverage, *i.e.* $100,000 per person and $300,000 per accident, as provided for in Mr. Waters's uninsured motorist policy, Mr. Waters would have recovered

-13-

up to the per person limit of $100,000 from the Schreier liability policy regardless of the $97,000 recovery by Ms. Dunham. Mr. Waters's uninsured motorist coverage thus exceeds the liability coverage carried by Mr. Schreier.

Consequently, under the statutory scheme and the facts of this case, Mr. Schreier was an uninsured motorist with respect to the injuries sustained by Mr. Waters. <u>Mr. Waters may proceed against his uninsured motorist carrier, USF & G, for the remainder of his damages, up to the per person limit of $100,000</u>. USF & G argues that because only one person is claiming uninsured motorist benefits under its policy, the only relevant limit is the per person limit of $100,000. As previously stated, this approach is inconsistent with the language and purpose of the uninsured motorist statute as amended in 1981. Mr. Waters's uninsured motorist coverage exceeds Mr. Schreier's liability coverage because Mr. Waters would have had available a separate per person limit of $100,000 had Mr. Schreier carried liability coverage of $100,000 per person and $300,000 per accident.

(Emphasis added.) *Id*. at 714-15.

As can be seen, in a contract action against an insurer by a plaintiff claiming underinsured motorist coverage, three figures are important: 1) the tort damage suffered by the policyholder; 2) the amount the policyholder receives, or is entitled to receive, from the underinsured motorist; and 3) underinsured policy limits of the policyholder.

As previously mentioned, appellee argued below that as a consequence of the fact that Mendoza settled before trial, leaving Allstate and appellee as the only remaining parties, what started out as a tort case, became a breach of contract case. This argument is without merit. A tort case is not transformed into a contract action simply because one of the defendants is dismissed. But even if such a transformation did occur, appellee, as the plaintiff in a contract action, would have to prove what her damages were due to the breach. *See Erie v. Heffernan*, 399 Md. at 617 ("[a]fter obtaining a final tort judgment, the injured

-14-

party must then prove the contract in order to recover uninsured motorist benefits from the insurer.")  And those damages could only be the amount by which Allstate's uninsured motorist policy limits exceeded Mendoza's coverage.  *Waters*, 328 Md. at 715.

In *West American Insurance Co. v Popa*, *supra*, Judge Eldridge, speaking for the Court said:

> Under the Maryland uninsured/underinsured motorist statutory provisions, when an insured under an automobile insurance policy has incurred damages as a result of the allegedly tortious driving by an uninsured or underinsured motorist, the insured has the option of initially bringing a contract action against his or her insurer to recover under the policy's uninsured/underinsured motorist provisions or of initially bringing a tort action against the tortfeasor. *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 170, 582 A.2d 501, 503 (1990); *Nationwide Mutual Ins. v. Webb*, *supra*, 291 Md. [721] at 736, 436 A.2d at 474 [(1981)]; *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 554, 403 A.2d 1229, 1232 (1979).  When the insured chooses the second option [*i.e.*, brings a tort action], and notifies his or her insurer of the tort action, the issues of the uninsured/underinsured defendant's liability [*i.e.*, the tortfeasor's liability] and the amount of damages are resolved in the tort action.  *Lane v. Nationwide Mut. Ins. Co.*, *supra*, 321 Md. at 173, 582 A.2d at 505; *Nationwide Mutual Ins. v. Webb*, *supra*, 291 Md. at 732-739, 436 A.2d at 471-76.
>
> Under the second option, in the ordinary situation, <u>if the defendant prevails in the tort action, or if the defendant is able to pay the amount of the plaintiff's damages as determined in the tort action despite the defendant's lack of sufficient insurance</u>, there never will be an uninsured or underinsured motorist claim arising out of the matter.  *See*, *Lane v. Nationwide Mutual Ins. Co.*, *supra*, 321 Md. at 173-74, 582 A.2d at 505 ("Benefits under the uninsured motorist endorsement may never be demanded, as the insured may lose the tort action or the uninsured tortfeasor defendant may be able to pay the tort judgment rendered against him").  Consequently, if the insured chooses the second option, <u>whether there will be an uninsured</u> or <u>underinsured motorist claim is not certain</u>; it is only a possibility depending upon future events.  When the insured informs his or her uninsured/underinsured motorist carrier of the tort suit, the carrier thereby receives notice of the possibility of

> a future uninsured or underinsured motorist claim. Under the circumstances, anything more than timely notice of the tort suit is neither feasible nor required by the cases.

352 Md at 462-63 (emphasis and brackets added).

In the subject case, Mrs. Kponve elected not to bring a breach of contract action against Allstate. Instead, she elected what the *Popa* Court referred to as "option two," at which point Allstate intervened in the lawsuit to protect its interest. According to appellee, by intervening, Allstate assumed the burden of proving that the amount payable under its contract was less than the amount of damages Mendoza caused her to suffer. But nowhere in her brief filed in this case, or in her written or oral argument before the trial court, does appellee provide <u>any</u> authority that would support her position. Furthermore, appellee's burden of proof argument is contrary to basic tort principles. In a tort case, quite obviously, a defendant never has the burden of proving the damages caused by injuring the plaintiff.

Although appellee does not cite any authority for the proposition that Allstate had the burden of proving what money was due her under the Allstate policy, appellee argues, generally, that the trial judge's decision to enter a judgment in the amount of $374,000 against Allstate was "supported" by the Court's decision in *Allstate Ins. v. Miller*, 315 Md. 182 (1989). Mary Miller was a passenger in her employer's vehicle when she was struck by a vehicle operated by Gregory Sowell. *Id*. at 184. At the time of the accident, Miller's employer had uninsured/underinsured motor vehicle coverage provided by Allstate. *Id*. The uninsured/underinsured policy limits set forth in Ms. Miller's employers' policy was

$50,000.  *Id*. at 189.  Ms. Miller filed a two-count complaint in the Circuit Court for Montgomery County.  The first count alleged that Sowell's negligence caused her to suffer injury.  A second count named Allstate as a defendant and alleged that Allstate had breached its contract with her by failing to pay her what was due for uninsured motorist coverage.  *Id*. at 184.  A default judgment was entered against Sowell, which left two issues unresolved: 1) whether Sowell was uninsured; and 2) the amount of damages that plaintiff was entitled to recover.  *Id*.  In the words of the *Miller* Court:

> The second issue, of course, had two aspects: the damages to which Miller was entitled by reason of Sowell's negligence, and the amount owed Miller by Allstate by reason of the insurance contract.

*Id*. (emphasis added).

In *Miller*, the trial judge instructed the jury that Sowell was an uninsured motorist as a matter of law.  The court also granted Miller's motion on the issue of liability as to Allstate.  What was before the jury was "the damages, if any, arising from the tort action of *Miller v. Sowell* . . . ."  *Id*. at 185.  The jury returned a verdict in favor of Miller in the amount of $120,000, which was $70,000 over Allstate's limits.  *Id*.  In a post-judgment motion, Allstate argued that a jury verdict against it exceeded its uninsured third-party policy limits and therefore should be reduced by the trial judge to the amount of the contractual coverage.  Miller, on the other hand, contended that Allstate had the burden of establishing and proving the limits of its liability to the jury and that, because the insurer elected not to enter the policy limits into evidence at trial, it could not offer the evidence for the first time

on a post-trial motion.  In response, the *Miller* Court stated:

> [Miller's] argument <u>might</u> be persuasive had this case gone to the jury on the contract claim against Allstate.  But, as we have seen, what actually went to the jury was the question of damages arising from the tort claim of Miller against Sowell.  We are dealing with what was functionally presented to the jury as a tort case.

(Emphasis added.)  *Id*. at 190.

In holding that the trial court should have reduced the amount of the judgment against Allstate in keeping with the contractual limitations of the policy, which in *Miller* were undisputed, the *Miller* Court held:

> [T]he amount of uninsured motorist coverage should not be disclosed [to the jury] unless the amount is in controversy.
>
> *      *      *
>
> [W]hat the jury was directed to consider, and all the jury was directed to consider, was the issue of damages in a tort case.  In this posture of the case, and under these circumstances, rather than require a party to establish uninsured motorist policy limits as an affirmative defense or as a limitation of exposure, the better rule is to allow the jury to make its decision on the issue of damages without being informed of the amount of coverage available. Therefore, the admission of uninsured motorist coverage amounts should not be a tactical decision left to the parties' discretion.  <u>The fact of the limit of uninsured motorist coverage is irrelevant to the issue of the amount of tort damages</u>.

(Footnote omitted.) (Emphasis added.)  *Id*. at 191-92.

In the case *sub judice*, Allstate was never sued in contract and therefore we are dealing with a tort case, pure and simple and not, as in *Miller*, with what was "functionally . . . a tort case."  In a tort case, regardless as to whether policy limits are disputed, the amount

-18-

of uninsured motorist coverage is irrelevant – those limits would only have relevance if it was necessary to bring a breach of contract action against Allstate.

There is no language in *Miller* that supports appellee's position or bolsters the (implied) position of the trial judge in this case. Instead, the *Miller* case makes clear, that Allstate did not have the burden of proof as to contract damages in a tort case such as this.

## IV.

## CONCLUSION

We hold that as an intervening party, Allstate did not have the burden of proving the amount of its policy limits or the amount of the credit to which it was entitled based on Mendoza's settlement. The reason for our holding is that Allstate intervened in a tort action and Allstate was never alleged to have committed any tort against Mrs. Kponve. The verdict in that tort action only established: 1) that Mendoza's negligence caused the accident; 2) that Mrs. Kponve was not contributorily negligent; and 3) that Mrs. Kponve suffered $374,000 damages as a result of that accident. The judgment did not, as appellee contends, establish how much money Allstate owed Mrs. Kponve under her insurance contract. Of course, if a contract action were later brought, Allstate could not contest the fact that as a result of the sole negligence of Mendoza, Mrs. Kponve suffered damages in the amount of $374,000; but, in such an action, it would be up to Mrs. Kponve to prove the amount of her contract damages, *i.e.*, establish the amount of her underinsured motorist coverage less the amount of her settlement with Mendoza. *Heffernan*, *supra*, 399 Md. at 617.

Under ordinary circumstances, we would vacate the judgment entered against Allstate in its entirety, after pointing out that our holding was without prejudice to Mrs. Kponve's right to bring a separate breach of contract action against Allstate. In this case, however, such a resolution would almost certainly result in a waste of time and effort.

Allstate has consistently taken the position that the underinsured motorist limits were $50,000 and that Mendoza's insurer settled with Mrs. Kponve for $25,000 and therefore it owes $25,000 to Mrs. Kponve. Technically, we cannot say that Mrs. Kponve agrees with Allstate's figures. Nevertheless, we can say that it is virtually certain that upon remand, counsel for Mrs. Kponve will agree with Allstate's figures. We say this because Mrs. Kponve, at trial, and on appeal was represented by competent counsel. Competent counsel would certainly have known, prior to trial in the tort action, the amount of underinsured motorist coverage and the amount of money their client received when she settled with Mendoza's carrier. In the circuit court, Mrs. Kponve's counsel never denied that what Allstate's counsel said as to the relevant figures was true, even though counsel had ample opportunity to dispute Allstate's figures. Instead, appellee's post-trial position has simply been that Allstate failed to meet its burden of establishing the figures.[6] If, on remand, Mrs.

---

[6]Once Mrs. Kponve's attorneys obtained a $374,000 judgment, they apparently "smelled blood in the water" and literally refused to concede anything. For instance, at oral argument in this case, when counsel for Mrs. Kponve was asked by a member of this panel whether Allstate's attorney was correct when he represented to us that Allstate's underinsurance policy limits were $50,000 per individual/$100,000 per accident, he refused to answer the question.

-20-

Kponve admits that Allstate is correct as to the amount of coverage and as to the amount of her settlement with Mendoza, a judgment in the amount of $25,000 should be entered in favor of Mrs. Kponve and against Allstate. On the other hand, if Mrs. Kponve will not agree as to one or both of the aforementioned figures, the judgment against Allstate should be stricken in its entirety, without prejudice to Mrs. Kponve's right to file a contract action against Allstate in which she will be required to prove the amount she is owed under her Allstate insurance policy.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THE VIEWS EXPRESSED IN THIS OPINION. COSTS TO BE PAID BY APPELLEE.**